No. 89-29

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

THE TRUSTEES OF THE WASHINGTON-IDAHO-
MONTANA CARPENTERS-EMPLOYERS RETIREMENT
TRUST FUND and the TRUSTEES OF THE LABORERS-
A.G.C. PENSION TRUST OF MONTANA,

    Plaintiffs/Respondents and Appellants,

  -vs-

GALLERIA PARTNERSHIP, et al., MARBLE MOVING,
STORAGE & TRANSFER, et al.,

    Defendants/Appellants and Respondents.

---

GALLERIA PARTNERSHIP, et al.,

    Third-Party Plaintiffs and Appellants,

  -vs-

THE TRUSTEES OF THE WASHINGTON-IDAHO-MONTANA
CARPENTERS-EMPLOYERS RETIREMENT TRUST FUND, et al.,

    Third-Party Defendants and Respondents.

---

APPEAL FROM: District Court of the Eighth Judicial District,
     In and for the County of Cascade,
     The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

  For Plaintiffs/Appellants: (Trustees)
    William K. Van Canagan and Christopher B. Swartley;
    Datsopoulos, MacDonald & Lind, Missoula, Montana

  For Defendants/Appellants:
    Jardine, Stephenson, Blewett & Weaver; K. Dale
    Schwanke, Great Falls, Montana (Galleria)
    Cure, Borer & Davis; Gregory J. Hatley, Great Falls,
    Montana (Estate of Tice)

  For Respondents:
    Gough, Shanahan, Johnson & Waterman; Jock O. Anderson,
    Helena, Montana (Compass Group, etc)
    Linnell, Newhall & Martin, Great Falls, Montana (Dees)
    Howard Strause, Great Falls, Montana (Marbles)
    Graybill, Ostrem, Warner & Crotty, Great Falls, Montana
    (Patterson)
    Elizabeth Best, Great Falls, Montana (Estate of Lund)
    Mary Van Buskirk, Bosch, Kuhr, et al, Havre, Montana

---

      Submitted on Briefs: June 1, 1989
        Decided: September 20, 1989

Filed:

_____
          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Galleria Partnership and the individual members of the partnership appeal from a final judgment entered against them in the District Court, Eighth Judicial District, Cascade County, and in favor of the Trustees of the Washington-Idaho-Montana Carpenters-Employers Retirement Trust Fund and the Trustees of the Laborers AGC Pension Trust of Montana (hereafter Trustees). The judgment is for $1,505,368.35 of which the sum of $1,308,193.35 is for deficiency judgment after mortgage foreclosure, with the rest being recoverable costs and attorneys fees.

The Trustees appeal from a final summary judgment entered against them in the same court and in favor of the Estate of Gordon P. Tice.

It appears that other issues remain for decision by the District Court arising out of the original action, but this Court has jurisdiction by reason of direct appeal and a proper rule 54(b) certification from the District Court.

I.

In this portion of the opinion we uphold the judgment of the District Court that the Trustees are entitled to deficiency judgment against Galleria Partnership, and costs and attorneys fees, but remand the amount of the deficiency judgment to the District Court for reexamination on the issue of the fair market value of the property given as security for the indebtedness at the time of the foreclosure sale.

A. Propriety of a Deficiency Judgment

On March 17, 1982, in Great Falls, Montana, 16 individuals made, executed and delivered a promissory note for $1,200,000.00 payable to the Trustees on terms set out in

- 2 -

the written note. The note was signed by the individuals not as partners of the Galleria Partnership, but in their individual capacity, except that three of the individuals also signed as partners in Great Falls Investors. Under the terms of the promissory note, the individuals undertook jointly and severally to pay the principal sum of the note and the interest accruing thereon.

At or about the same time, but effective March 17, 1982, Galleria Partnership, composed of 10 of the individuals who signed the promissory note, and three additional persons comprising the Great Falls Investors made, executed and delivered to Safeco Title Insurance Company as trustee, a trust indenture and security agreement, wherein the trustees were named as beneficiaries, to secure the principal sum of $1,200,000.00 with interest thereon according to the terms of the promissory note above referred to.

The real property which was the subject of the trust indenture was the location of a warehouse which had been remodeled for the purpose of leasing to various business tenants. The building had been purchased and remodeled beginning in 1982 by a prior partnership, Galleria Associates, managed by one Dan Cook.

Cook had obtained a $1,950,000.00 appraisal of the building in its remodeled state so he could get a long-term loan to pay off Galleria Associate's interim construction loan. For this purpose Cook approached third party defendant, Compass, which specializes in handling loans of union pension trust funds and then servicing those loans. Compass is a wholly owned organization of third party defendant, Old National Bancorporation. Cook was advised by Compass that Galleria Associates could not borrow from the Trustees because Cook was disqualified under the provisions of the Federal Employee Retirement Income Security Act

(ERISA) statutes. 29 U.S.C., sections 1,001 et seq. Thereupon, Cook set about the formation of Galleria Partnership, to which Galleria Associates would eventually sell the building, and the Galleria Partnership would qualify as a borrower under ERISA. Cook developed a prospectus on the project, and lined up the 13 individuals and Great Falls Investors that eventually signed the trust agreement. The individuals who became partners in the Galleria Partnership held varying fractions of interest in the partnership. Compass knew that Cook was procuring such interest; the agents of Compass had no idea what representations Cook was making to the prospect of investors in Galleria Partnership, and did not ask.

It seems clear that Cook, himself, or through others that were acting on his information, represented to each of the persons who ultimately signed the loan documents that the loan was to be nonrecourse. At least three lawyers were among the investors, each of whom was of the view that a deficiency judgment could not be recovered on the foreclosure of a trust indenture.

Cook hand-carried the loan documents, including a commitment from Compass as to the terms of the loan, which stated that security for repayment was to be a first lien on the building and thus he secured the signatures of the borrowers. Each of the borrowers was told that the loan was nonrecourse. Only one attorney read the note or trust indenture, and he found nothing in them that was contrary to his view that the loan was nonrecourse.

In capsule, then, after the loan was closed, it turned out that the bulk of the tenants in the Galleria building were businesses Cook had an interest in, which had been known to Compass when the loan commitment was made. Cook's economic situation deteriorated, which ultimately resulted in

- 4 -

the failure of various tenants to pay their rents in a timely basis. The Galleria Partners were using those rents to cover operating expenses and to make the monthly loan payments which were $14,916.00 each. As the tenants' rents fell into arrears, the monthly payments on the loan were made progressively later. Compass was aware of the reason for the late payments from the partnership and continued to accept the payments together with late charges.

The November, 1984 loan payment had not been paid by early December of that year. There is a dispute in the evidence as to whether Compass advised appellant Bloomgren, a CPA, who was keeping the Partnership books and paying its bills, that Compass required both the November and December payments to be made together. Bloomgren denies any contact from Compass at the time. Nevertheless, on December 11, 1984, Compass sent a default notice to Bloomgren, accelerating the entire loan balance of $1,225,668.81 and demanding its payment in nine days. The default notice crossed in the mail the November, 1984 payment which Bloomgren had forwarded to Compass. When the November payment was received, Compass returned it with a letter reiterating the demand for the entire balance.

Thereafter there were proposals for settlement which never reached fruition. In that period of time, Compass had the building appraised in the summer of 1985 and the appraisal came in at $1,100,000.00. The Trustees were unwilling to accept that sum as an appraisal and no settlement for deficiency was arrived at by the parties.

On April 12, 1985, the Trustees filed an action in the District Court for the purpose of foreclosing on the trust indenture. After lengthy discovery and complex proceedings, the District Court on October 29, 1987, determined in a summary judgment that the trust indenture constituted a first

lien upon the real property of Galleria Partnership, and issued its order of for decree of foreclosure. The order directed the Sheriff of Cascade County, Montana, to sell the real estate in one parcel at public auction under the laws governing the sale of real estate under execution upon proper notice being given; and to deliver a deed to the purchaser. The order of foreclosure reserves specifically the question of any deficiency judgment.

No return of the sale by the Sheriff under the foreclosure sale can be found in the District Court file which has been forwarded to us. Under the mortgage foreclosure statutes, "if it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for such balance against" the defendants liable for the debt. No party before us raises any contention as to the lack of sheriff's return in the District Court file, and in view of our decision relating to the deficiency judgment it is unimportant here. It is reflected in the order of the District Court, dated October 7, 1988, when the deficiency judgment was rendered against the Galleria Partnership, that the Sheriff's sale took place on December 8, 1987, and that the bid price obtained there at was $565,000.00. The briefs of all parties assume that the sole bid at the Sheriff's sale was that of the Trustees.

So much for the background leading up to the deficiency judgment. The Galleria Partnership raised several issues contesting the validity of the deficiency judgment which we will now take up.

1. The Chunkapura decision.

The Partners contend that under First State Bank of Forsyth v. Chunkapura (Mont. 1987), 734 P.2d 1203, because

the case before us involves a trust indenture, a deficiency judgment is improper.

In Chunkapura, this Court faced for the first time the question whether a deficiency judgment could be obtained on a trust indenture where the lender chose to foreclose the indebtedness under the mortgage foreclosure statutes rather than by trustee's sale under the Small Tract Financing Act.

In Chunkapura, we pointed out that prior to 1963, there was but one statutory provision for the foreclosure of mortgages, and that those statutes permitted the debtor a right of possession during the period of redemption while the debtor personally occupied the land as a home for himself and his family (§ 71-1-229, MCA), and further permitted all execution debtors a right of redemption in the same manner as permitted to debtors under execution sales (§ 71-1-228, MCA). The Small Tract Financing Act of 1963 (§ 71-1-301, -321, inclusive, MCA) permits the use of deeds of trust or trust indentures to secure the performance of obligations; provides that upon default and foreclosure, the obligee's right of occupation of the real property does not extend beyond ten days from the date of the sale (§ 71-1-319, MCA); makes no provision for any right of redemption; and further provides that deficiency judgments are not allowed when a trust indenture is foreclosed by advertisement and sale (§ 71-1-317, MCA). In Chunkapura, we noted that the Small Tract Financing Act was enacted at the instance of the banking and lending industry. They contended that the "one action rule" of mortgage foreclosure, and the attendant right of redemption and right of possession rules, hampered the financing of improvements on small tracts in Montana because banks and investors were unwilling to invest in mortgages when on default their funds would be tied up during the period of redemption. This Court noted a quid pro quo

relating to the new legislation, that the lenders would give up their deficiency judgment rights on default, if the borrowers would give up their rights of possession and redemption. Chunkapura, 734 P.2d at 1205.

The problem in Chunkapura arose because § 71-304(3), MCA, provides that a trust indenture executed in conformity with the Small Tract Financing Act may be foreclosed "by advertisement and sale . . . or, at the option of the beneficiary [lender], by judicial procedure as provided by law for the foreclosure of mortgages on real property." In Chunkapura, the bank opted to foreclose under the mortgage provisions of the law and insisted that it was entitled to a deficiency judgment as there authorized.

Our decision in Chunkapura was to the effect that a deficiency judgment would not be allowed when trust indentures are executed in conformity with the Small Tract Financing Act because to allow a deficiency judgment would be inconsistent with the provisions of that Act. On rehearing, we modified that holding so that Chunkapura "is to be considered as precedent only for trust deeds related to occupied, single family residential property." 734 P.2d at 1211.

Although we noted in Chunkapura that the ambiguity existing between the Small Tract Financing Act and the standard provisions for mortgage foreclosure created legal problems, and we recommended the attention of the legislature to the same, the legislature has met twice in regular session since Chunkapura and has undertaken no action regarding the subject.

The contention of the Partners here before us on appeal is that the Chunkapura modification is too limited, has no statutory source and should be expanded by us to prevent a deficiency judgment in this case, since the Galleria

development was a "business expansion," one of the reasons for the enactment of the Small Tract Financing Act. (Section 71-1-302, MCA).

We can understand the difficulty the Galleria Partnership has in accepting the Chunkapura decision as modified on rehearing. The trust indenture which they executed is in conformance with the Small Tract Financing Act and that Act provides that on foreclosure there should be no deficiency judgment. Foreclosure proceedings under mortgage laws are permitted deficiency judgments. When a lender holding a trust indenture as security chooses to foreclose under the mortgage laws, Chunkapura as modified holds that except for occupied single family residential property, lenders can obtain a deficiency judgment even on trust indentures. This result became necessary because of the penchant of the lending industry, after the passage of the Small Tract Financing Act, to use deeds of trust almost exclusively. In fact, the original Act which once was limited to tracts of three acres, was amended to 15 acres, and in 1989 to 30 acres.

In Chunkapura, we could easily have held in resolving the ambiguity between the two modes of foreclosure that a foreclosure of a trust indenture under the mortgage laws was nevertheless a foreclosure "by advertisement and sale" and therefore deficiency judgments were barred under § 71-1-317, MCA. This result however would have created havoc in the loan industry. The majority in Chunkapura decided instead to limit the prohibition against deficiency judgments to trust deeds used as security for the financing of single dwelling, occupied homes (the type of financing for which the Small Tract Financing Act was argued to the legislature). The whole problem of course deserves legislative attention, but until the legislature does act, we will limit the preclusion

of deficiency judgments on deeds of trust used as security instruments in accordance with Chunkapura. That, of course, excludes the Galleria Partners, who without question, executed instruments relating to a commercial loan.

In First Federal Savings and Loan Association of Missoula v. Anderson, no. 89-002, decided July 25, 1989, 46 St.Rep. 1280, we upheld Chunkapura so far as it relates to single family, occupied residential property. Galleria Partnership does not qualify for the preclusion of a deficiency judgment under Chunkapura since Galleria Partnership involves a purely commercial loan.

2. The Remedy of a Deficiency Judgment and the Language of the Operative Documents.

Under this contention, Galleria Partnership argue that under the trust indenture, there is no mention of a possible deficiency judgment, and when a trust indenture is foreclosed, the lender is entitled only to recover its costs and expenses incident to the foreclosure and a reasonable attorneys fee.

Section 7.2 of the Trust Indenture in this case provides in part:

> . . . upon the occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Indenture in the manner provided by law for the foreclosure of mortgages on real property, and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including a reasonable attorney's fees in such amount as shall be fixed by the court. . .

We do not find that the foregoing language is a limitation upon the damages that may be recovered in a mortgage foreclosure conducted under § 71-1-222, MCA, which specifically provides for deficiency judgments if the

sheriff's return shows that the proceeds are insufficient to pay the balance then due. We find no merit in the Partnership's contention in this point.

It is true that no reference is made in the body of the Trust Indenture in this case of the possibility of a deficiency judgment on foreclosure, as would be the case if a regular mortgage form had been used. The lack of a mention of deficiency judgment in the instruments is immaterial. As long ago as 1895, this Court in First National Bank of Butte v. Pardee, held that a deficiency judgment may properly be entered against the grantor in a deed of trust given to secure the payment of a promissory note, though there was nothing in the terms of the deed itself to warn of the possibility of a judgment for a deficiency. First National Bank of Butte v. Pardee (1895), 16 Mont. 390, 393, 41 P. 77, 78.

3. <u>Did the Trustees Waive Their Right to Accelerate the Balance Due or Were They Estopped From Doing So?</u>

Galleria Partnership contends that from the time of the execution of the note in 1982 until the notice of default in December 11, 1984, when the Trustees sent notice of default and accelerated the balance due, Galleria Partnership customarily was late in making the monthly payments. Galleria Partnership contends that the customary acceptance by the lender of late payments, and payments by Galleria of late charges in connection with its late payments, had the effect of lulling the Partnership into a sense of false security and because thereof the Trustees either waived their right to accelerate the remaining balance due without notice or they were estopped from doing so.

This Court has held that waiver is the "voluntary and intentional relinquishment of a known right, or claim or privilege," Thiel v. Johnson (1985), 219 Mont. 271, 274, 711

- 11 -

P.2d 829, 831. We also held in Thiel that "waiver may be proved by expressed declarations or by a course of action and conduct so as to induce the belief that the intention and purpose was to waive." Thiel, 711 P.2d at 832.

Again we turn to the trust indenture and find in paragraph § 6.5 thereof that any delay or omission by the beneficiary in the exercise of any right, power, or remedy arising out of the trust indenture shall not impair any such right power or remedy, or the right of the beneficiary to resort thereto at a later date. Further such delay shall not be construed to be a waiver of any default or event of default under the indenture.

Galleria Partnership relies especially on Soltis v. Liles (Or. 1976), 551 P.2d 1297, 1300, which held that such nonwaiver provisions as are found in the trust indenture here do not prevent the promissor from waiving the conditions of the contract by his conduct. Galleria Partnership claims that the sudden notice sent by the Trustees in this case, after the long acceptance of late payments, was itself a breach of the contract, and that the Trustees, as a breaching party, cannot now call upon the other party to perform, relying on Western Media Inc. v. Merrick (Mont. 1989), 757 P.2d 1308, 1311.

The Partnership contends that this point is one of first impression in Montana. While we can conceive of cases in which the nonwaiver provisions of a contract should not be applied, the facts here do not warrant such a result. Not only must the evidence show a course of conduct by which one party waived the contractual obligations of the other party, but additionally, it seems to us, the evidence should show that the same party also waived any right to rely on the nonwaiver provisions of his contract. In other words, in this instance, since waiver is a known and voluntary

relinquishment of a known right, those elements of waiver at least have to appear from the evidence before it can be held that the contractual right of nonwaiver has been waived.

4. **Is** <u>Deficiency</u> <u>Judgment</u> <u>Barred</u> <u>Because</u> **this** **is** **a** <u>Purchase</u> <u>Money</u> <u>Mortgage</u>?

Under the mortgage foreclosure laws of this State, a deficiency judgment is not allowed on the foreclosure of a purchase price mortgage. Section 71-1-232, MCA. Galleria Partnership contends in this case that because the Trustees lent the money, knowing that the proceeds of the loan would be used by the Partnership to pay off Galleria Associates, the prior partnership, for the purchase of the real property, that the arrangement in effect was that of a purchase price mortgage and so a deficiency judgment was barred under the statute.

The language of the statute itself defeats the contention. It provides:

> Upon the foreclosure of any mortgage, executed to any <u>vendor</u> or real property or to his heirs, executors, administrators, or assigns for the balance of the purchase price of such real property, the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same.

Plainly, the Trustees are not the <u>vendor</u> in this case, nor are they the assignee of any vendor. The language simply does not fit the Trustees so as to prevent their obtaining a deficiency judgment.

Where the lender is not the vendor, nor standing in the vendor's shoes, the statute does not prevent a deficiency judgment. Aetna Life Insurance Co. v. Slack (Mont. 1988), 756 P.2d 1140, 1144.

5. <u>Was</u> <u>the</u> <u>Loan</u> <u>Illegal</u>?

- 13 -

The Partnership contends that under the federal ERISA laws it is illegal to utilize labor pension funds for the benefit directly or indirectly of a "party in interest." 29 U.S.C., Section 1106.

The reason the prior partnership, Galleria Associates, was disqualified from borrowing pension trust funds was that both Dan Cook and Robert Patterson, another partner in Galleria Associates, were "parties in interest" because they were employers covered by "a plan subject to the Retirement Income Security Act." 29 U.S.C., Section 1002(14)(c).

Galleria contends that the loan here indirectly benefited both Patterson and Cook, because as partners of the prior partnership they probably received proceeds from the loan, since the proceeds were used to purchase the interest of Galleria Associates in the building. The District Court in disposing of this issue in summary judgment, did not set forth findings of fact, and Galleria Partnership contends the court erred by failing to provide any rationale for its ruling on this issue.

The Partnership contends therefore, that the loan from the pension trust funds through Compass was illegal in the first instance, and a court of equity will not enforce between the parties an illegal contract.

The simple answer to this issue is that made by the Trustees in response. This was not a "disqualified transaction" because the borrower in this case was the Partnership and not Galleria Associates. We find no merit in this contention.

6. Did the Terms of the Loan Commitment from the Lender Bar a Deficiency Judgment?

When the loan in this case was in the making, Compass provided a letter dated December 17, 1981, addressed to the Galleria Partners, which contained terms relating to the

making of the loan. This letter of commitment was used by Cook in obtaining signatures from the Partners. Among the special conditions for the loan was the requirement that the loan was to be secured by a deed of trust. The Partners contends that the use of the commitment letter, along with the alleged representations by Cook, that there would be no personal liability for the Partnership, created a reasonable belief in the minds of the potential partners that they would not be liable personally for deficiency judgment. The District Court disposed of the issue on the theory of misrepresentation, saying that if a misrepresentation was made, the other party nevertheless has a duty to use diligence with respect to any such representation made, and here, the borrowers, for the most part, did not read the loan documents; and if they had read the note they would have seen that the payments required by them were phrased in terms of personal liability.

The Partnership appears to concede the duty of diligence on the part of the borrowers, but contends that the District Court missed the issue of lack of consideration. The Partnership contends that no deficiency judgment was bargained for, and because in the minds of the borrowers a deed of trust secured a nonrecourse loan, there is no consideration to which the court could point for a deficiency judgment. Again the Partnership contends that the trust indenture itself specifically limited recovery in the event of default to the Trustees' attorneys fees, costs, and expenses incident to the foreclosure.

Of course, all representations made by Cook were superseded by the written instruments, the promissory note, and the deed of trust. Section 28-2-904, MCA. The validity of neither the promissory note nor the trust indenture is in dispute, and there is no claim here of a mistake in those

instruments or an imperfection in their writings, so extrinsic evidence may not be considered to vary the terms of those written instruments. Section 28-2-905, MCA.

We do not find in this case the specifications in the loan commitment to be different in essence from the promissory note and the trust indenture which eventually were executed. This Court held in Warner v. Johns (1949), 122 Mont. 283, 288, 201 P.2d 986, 988, that where the consideration expressed in the written instrument is contractual in its nature, oral evidence is inadmissible to show a different consideration because then it changes the legal effect of the instrument. That rule applies here, although the question is not one of evidence but rather a contractual interpretation. The fact that a deficiency judgment was not expressly mentioned does not change the legal effect of the instruments when executed.

7. Did the Representation by Cook that the Loan Would be Nonrecourse Bar a Deficiency Judgment?

On this issue, the Partnership seeks to impute to the Trustees on agency grounds responsibility for the alleged misrepresentations made by Cook in securing the signatures of the borrowers to the promissory note and the trust indenture.

The Partnership cites numerous cases involving principals and agents to the effect that the principals are bound by the acts or representations of the agents. None of those cases is applicable here. The District Court rejected this contention saying there was no evidence of any kind that would make Cook either an actual or a ostensible agent of Compass or the Trustees in procuring the signatures. Since any evidence that Cook was representing either Compass or the Trustees in procuring the signatures is totally lacking, no imputations can be made by any court that either Compass or the Trustees were responsible for the alleged

misrepresentations made by Cook. A deficiency judgment cannot be barred on this contention.

8. Disposition

As the foregoing discussion shows, there is no question that the Partnership members are jointly and severally liable on the promissory note which they signed individually, and that, after foreclosure of the real property given to the security obligation, the individual Partners are also liable for deficiency judgment. The size of the deficiency judgment in relation to the original note is however a matter of concern.

It is uncontroverted in the evidence here that in 1981, when Dan Cook was first arranging for a loan, he obtained an appraisal of the property as remodeled at $1,950,000.00. In 1982, that appraisal had sufficient validity to justify the Trustees in extending a loan of $1,200,000.00 to the Galleria Partnership.

In 1985, after the default notice had been served by the Trustees, they obtained an appraisal of the property which they did not accept, but which apparently valued the remodeled property at $1,100,000.00.

At the sheriff's sale, in 1987, the Trustees, as beneficiary under the trust indenture, submitted a bid on the real property as remodeled for $565,000.00. The District Court found that the principal amount of the obligation due on November 1, 1984, was $1,185,655.49. Accrued interest, attorneys fees and recoverable costs brought the eventual deficiency judgment to $1,500,368.35. The fact that the real property was bid in at the sheriff's sale for a sum at approximately 30% of its original appraised value is the basis for what must be a catastrophic deficiency judgment for the Partners.

Montana's statutes have no direct provisions under the mortgage foreclosure procedures to determine the fair market value at the time of the forced sale of the property subject to foreclosure. We pointed out in Chunkapura that several of the states surrounding us have statutory provisions which serve to protect judgment debtors when foreclosure of their property is made to satisfy the judgments. Our examination of the statutes of surrounding states, and of the interpretations of their respective courts concerning those statutes show that predominately, a deficiency judgment is limited to the difference between the fair market value of the secured property at the time of the foreclosure sale, regardless of a lesser amount realized at the sale, and the outstanding debt for which the property was secured. We set forth in Chunkapura expressly that California, Washington, Arizona, Utah, Idaho, and Oregon, are states with such protective provisions, with Alaska being the sole exception. Chunkapura, 734 P.2d at 1207-1208.

In connection with this case, we have looked at the provisions of additional states. In South Dakota, the amount realized at sheriff's sale must be the "fair market value" of the property. S.D. Codified Laws Ann. § 21-47-16 (1989). In North Dakota, there is a fair market value provision which if contested must be submitted to a jury. N.D. Cent. Code § 32-19-06 (1987). Colorado has no statutory restrictions on deficiency judgments, as far as we can determine, but its laws provide that trust indentures are to be foreclosed by a public trustee (not private) and that all others must be foreclosed as a mortgage. In Wyoming, a mortgage is construed as a covenant for the payment of the sum secured, and unless there is specific covenant in the mortgage, on foreclosure the remedies are limited to the lands mentioned in the mortgage. Wyo. Stat. § 34-1-136 (1989).

In U.S. v. MacKenzie (9th Cir. 1975), 510 F.2d 39, 41, it was noted that the purpose of the Nevada and Arizona statutes relating to deficiency judgments is to prevent the injustice that occurs when a debtor's property is sold on foreclosure sale for a price significantly less than its fair market value.

Some states surrounding us also have other provisions relating to the protection of the judgment debtor. Thus in Wyoming, the mortgagee or party to whom the debt is owed may bid in at the sheriff's sale, but his bid must be made "fairly and in good faith." Wyo. Stat. § 34-4-108 (1989).

As we said, the Montana statutes are silent, both as to the right of the mortgagor to bid in to the sheriff's sale, and as to the duty of a court to determine if the sheriff's sale reflects the fair market value of the property. A mortgage foreclosure proceedings, however, is in the equity jurisdiction of the courts. This Court is enjoined by statute, in equity cases and in matters or proceedings of an equitable nature, to review all questions of fact arising on the evidence presented in the record, and to determine the same. Section 3-2-204(5), MCA. Courts sitting in equity are empowered to determine all the questions involved in the case and to do complete justice; this includes the power to fashion an equitable result. Maddox v. Norman (1983), 206 Mont. 1, 14, 669 P.2d 230, 237. An equity court whose jurisdiction has been invoked for an equitable purpose, will proceed to determine any other equities existing between the parties connected with the main subject of the suit, and grant all relief necessary to the entire adjustment of the subject. Tiffany v. Uhde (1950), 123 Mont. 507, 512-513, 216 P.2d 375, 378.

Had the sole bid at the sheriff's sale for the property here been for $100 or $1,000, undoubtedly we would be moved

by equity to inquire as to its fairness. The actual bid of $565,000.00 is only a matter of degree. In the exercise of our equity jurisdiction therefore, we deem it proper to remand to the District Court to determine the fair market value of the property at the time of the sheriff's sale. The "fair market" is the intrinsic value of the real property with its improvements at the time of sale under judicial foreclosure, without consideration of the impact of the foreclosure proceedings on the fair market value. Chunkapura, 734 P.2d at 1207.

The method of determining fair market value we will leave to the District Court, though it seems appropriate that each opposing party should be allowed to present the opinion of appraisers selected by them respectively.

When the fair market value of the property is determined by the District Court, that figure would be the basis for the determination of a deficiency judgment if any.

## II.

The Trustees appeal from a summary judgment entered by the District Court in this cause holding that the estate of Gordon P. Tice is not liable to the Trustees for a deficiency judgment arising out of the instruments above described.

Gordon Tice executed the promissory note and the trust indenture which is the subject of this litigation effective March 17, 1982. He died on July 16, 1984. His spouse, Mary C. Tice, was appointed personal representative of the estate on January 9, 1985. Notice to creditors is published first on January 17, 1985, with final publication occurring on January 31, 1985.

The Trustees' complaint naming Gordon P. Tice as a party defendant was filed April 12, 1985. The District Court found that service of the summons and complaint was made on May 31, 1985, which is more than four months after the publication of

the first notice of creditors on January 17, 1985. Under the facts, the District Court granted the personal representative a summary judgment precluding the Trustees from any deficiency claim against the estate of Gordon P. Tice.

The Trustees complaint however was filed on April 12, 1985, within the four month period. Section 72-3-804(1), MCA, provides that a claim against an estate is deemed presented on the first to occur of a receipt of the written statement of claim by the personal representative or by the filing of a claim of the court. Section 72-3-804, MCA, also provides that a claimant may commence a proceeding against a personal representative to obtain payment of claim against the estate, but the commencement of the proceeding must occur within the time limit for presenting the claim. The Trustees contend that the term "commencement of the proceeding" is met by the filing of the complaint, and not by the service of the summons of complaint upon the party defendant.

It also appears from the record that on April 10, 1985, a copy of the Trustees' complaint was forwarded to counsel for Mary Tice, the personal representative, but said counsel also represented all of the other Partnership defendants. On April 19, 1985, that attorney wrote the attorney for the Trustees, suggesting that an acknowledgment of service of blank form be sent to cover all the Partnership defendants. This was done by counsel for the Trustees on April 24, 1985. It was not, however, until May 31, 1985, two weeks after the nonclaim statutory period had expired that Mary Tice, as personal representative, of the estate of Gordon P. Tice, signed the acknowledgment of service.

It appears from an examination of the statutes relating to creditors' claims against an estate that the claim of the Trustees was not properly presented. Section 72-3-803(1)(a), MCA, provides that claims, including those founded on

contract or other legal basis, if not barred by other statutes of limitations, are barred against the estate unless presented within four months after the date of the first publication of notice to creditors if that notice is properly given. The manner of the presentation of claims is covered in § 72-3-804, MCA, as follows:

> (1) The claimant shall mail to the personal representative return receipt requested a written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed or may file a written statement of the claim, in the form prescribed by rule, with a clerk of the court. The claim is deemed presented on the first to occur of receipt of the written statement of claimed by the personal representative or the filing of the claim of the court . . .

Thus it appears, that a claim founded on contract, as in this case, must be presented either to the personal representative, or by filing the same with the court. The filing of a suit outside the probate proceedings, even though within the four month period, does not suffice to properly submit a claim against an estate. Hence, the claim of the Trustees against the Gordon P. Tice estate is time-barred.

Even so, the Trustees argue that there are due process implications which have not been met in the matter of notice that was followed in the Tice estate. The Trustees rely on Tulsa Professional Collection Services, Inc. v. Pope Executrix of the Estate of H. Everett Pope, Jr. (1988), 108 S.Ct. 1340, ___ U.S. ____, 99 L.Ed.2d 565. This case involved a provision of Oklahoma's probate laws requiring claims arising upon a contract to be presented to the executor of the estate within two months of the publication of notice to creditors or else be barred. The creditor, a hospital, had rendered medical services to the decedent Pope for about five months. Upon his death, the hospital, through

- 22 -

its assignee, Tulsa Professional Collection Services, Inc., had not presented a claim to the executor of the estate within the two months period. Tulsa, relied instead on an Oklahoma statute which provided that the executrix must pay the expenses of the last illness. The Oklahoma trial court ruled that the failure to present the claim within the two month period required a denial of the claim. This result was affirmed in the Oklahoma Court of Appeals and by the Supreme Court of Oklahoma. The latter Court reasoned that the purpose of notice in probate proceedings is not to make a creditor a party to the proceedings, but rather to notify him that he may become one if he wishes.

The United States Supreme Court in Tulsa reversed on due process grounds. The Supreme Court determined that the unpaid medical bill was a property interest protected by the Fourteenth Amendment and that under the Fourteenth Amendment the due process clause applied if state action were involved. The Supreme Court further found that the probate proceedings did involve state action, especially since the probate court appointed the executor, and ordered notice to be given to creditors, required that proof of publication be filed with the court, and that claims also be filed with the court within the time period.

In such a case, the United States Supreme Court held that a duty of providing actual notice of the probate proceedings and of the necessity to present claims to known creditors, or reasonably ascertainable creditors, was required to satisfy due process.

The decision of the United States Supreme in Tulsa is a step-out from earlier cases, Mullane v. Central Hanover Bank and Trust Co. (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 and Mennonite Board of Missions v. Adams (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180. In Baker National Bank

v. Henderson (1968), 151 Mont. 526, 529, 445 P.2d 574, 576, this Court held that the Mullane doctrine was not applicable to probate proceedings.

The provisions of our probate statutes relating to notice by publication to creditors against an estate may under Tulsa have due process implications as far as known creditors or reasonably ascertainable creditors are concerned, but that issue cannot be determined in this case. When the cause was before the District Court here, the issue was decided purely on the statutory provisions which were applicable under the probate code. The issue of due process was not preserved for appeal and is therefore not before us at this time.

The contention of the estate of Gordon P. Tice that the Trustees' appeal in this case was untimely taken is without foundation. Galleria Partnership having filed a timely notice of appeal in this case on November 8, 1988, the filing of the Trustees' notice of appeal on November 18, 1988, was timely filed. Rule 5(a)(3), M.R.App.P.

III.

## Conclusion

1. The judgment of the District Court granting deficiency judgment to the Trustees is by the Court affirmed. The cause is remanded for a determination by the District Court of the proper amount of deficiency judgment, depending upon the fair market value of the foreclosed property at the time of the sheriff's sale. Neither Galleria Partnership nor the Trustees shall recover attorneys fees or other costs with respect to this appeal. If on remand, the fair market value is determined to be a sum more than $565,000.00 the District Court, in calculating a deficiency judgment if any, shall not allow interest from the date of the sheriff's sale to the date the new judgment is entered. The Trustees are entitled

to attorneys fees and costs in the proceedings relating to the establishment of fair market value, except that each party shall pay the cost of its own appraisers.

2. With respect to the appeal of the Trustees from the judgment favoring the estate of Gordon P. Tice, that judgment is affirmed. The estate is entitled to recoverable costs on appeal and to attorneys fees under the reciprocal statute.

3. This cause is remanded to the District Court for further proceedings of the court in accordance with this opinion.

_____
John C. Sheehy
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____

_____
William E. Hunt

_____
Justices

Mr. Justice Fred J. Weber did not participate.

- 25 -

Justice R. C. McDonough dissents.


I dissent to the remand to the District Court to determine the fair market value of the property at the time of the sheriff's sale, and the use of that value for the determination of a deficiency judgment. I concur with the balance of the majority opinion.

Section 71-1-222, MCA (1987), governs as to such proceedings in foreclosure suits. The section is as follows:

> (1) There is but one action for the recovery of debt or the enforcement of any right secured by mortgage upon real estate, which action must be in accordance with the provisions of this part. In such action the court may, by its judgment, direct:
> (a) a sale of the encumbered property (or so much thereof as may be necessary);
> (b) the application of the proceeds of the sale; and
> (c) the payment of the costs of the court, the expenses of the sale, and the amount due the plaintiff.
> (2) If it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt, and it becomes a lien upon the real estate of such judgment debtor, as in other cases on which execution may be issued.
> (3) No person holding a conveyance from or under the mortgagor of the property mortgaged or having a lien thereon, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action, need be made a party to such action. The judgment therein rendered and the proceedings therein had are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action.

It is noted in subsection (1) that the court directs the sale of the encumbered property, applies the proceeds, and

directs payment of the costs. This section does not prescribe the details of the sale itself, notice thereof, etc.; these details are to be set forth in the decree or judgment of foreclosure and are governed by rules of equity. Montana has no statutory requirement of an appraisement of the property to be sold, either before or after the sale.

However, in subsection (2) of said section, it does provide for a deficiency judgment in specific terms. If the proceeds of the sale are insufficient to pay the debt due, and a balance still remains, judgment can then be docketed for such balance against the defendants personally. The statute does not provide for the calculation of a deficiency judgment by applying a fair market value, as determined by the court, to the amount due. Rather, it directs that a deficiency judgment should be calculated by applying the proceeds of the sale to the amount due. This statute clearly sets forth how a deficiency is to be calculated. The statute prevails over any common law, see § 1-1-108, MCA, and § 1-2-103, MCA (1987).

Even if the statute did not cover the calculation of the deficiency, it would be inequitable to require such a determination on the state of this record. The defendants have never raised the issue in the lower court or in this Court, although they could have done so. They were represented by competent counsel at all stages of the suit, three of the defendants are attorneys at law, and all appear to be knowledgeable investors. If the defendants were dissatisfied with the proceeds of the sheriff's sale they could have petitioned the District Court to set aside the sale on grounds of unfairness and inadequacy, and asked to have it appraised for guidance of the court in determining whether or not to set aside the sale and order a new sheriff's sale. Other equitable options might have been

available.  The defendants chose not to avail themselves of any of these options.  I would affirm in toto.

_____
                                    Justice


Justice L. C. Gulbrandson concurs in the foregoing dissent.

_____
                                    Justice