No. 92-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

FIRST WESTERN FEDERAL SAVINGS BANK,

      Plaintiff and Respondent,

-vs-

JOHN A. LENCE,

      Defendant and Appellant.

FILED

SEP 29 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      John A. Lence, Attorney at Law, Kalispell, Montana

      For Respondent:

      Steven E. Cummings, Murphy, Robinson, Heckathorn &
      Phillips, Kalispell, Montana

Submitted on Briefs:  August 13, 1992

Decided:  September 29, 1992

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

John A. Lence appeals from the Judgment and Decree of Foreclosure entered following a grant of summary judgment in favor of First Western Federal Savings Bank by the Nineteenth Judicial District Court, Lincoln County. We affirm.

We address the following issues:

1. Did the District Court err in designating its Judgment and Decree of Foreclosure a final judgment?

2. Did the District Court err in concluding that a deficiency judgment is available following judicial foreclosure of a deed of trust securing a condominium not utilized as a primary residence?

3. Did the District Court err in refusing to delay a sheriff's sale and determination of fair market value of the property in question pending the outcome of separate litigation?

The basic facts of this case are not in dispute. On January 31, 1984, appellant John A. Lence (Lence) signed and delivered to Montana Savings and Loan Association an adjustable rate promissory note (note). Payment of the obligation evidenced by the note was secured by a deed of trust signed by Lence, with Montana Savings and Loan Association as beneficiary. The deed of trust describes the property as "Unit No. 21 of Crystal Lakes Condominiums Club House Units" (the condominium). Respondent First Western Federal Savings Bank (First Western) is the successor in interest to Montana Savings and Loan Association and is the present owner and holder of the note and deed of trust.

2

Lence purchased the condominium as a secondary residence; his primary residence was in Whitefish, Montana. He lived at the condominium during the summers from 1977 until approximately 1985. Lence sold the property on February 1, 1986, and repossessed it on December 22, 1989. Since the repossession, he has rented the property on an intermittent basis. The property is the subject of federal district court litigation by Lence and other Crystal Lakes property owners for the right to use facilities at Crystal Lakes Resort.

Lence defaulted on the note by failing to pay the monthly installments due on December 1, 1989, and on the first day of each month thereafter. The outstanding amount owed as of December 10, 1990, is $55,971.38, plus interest at a variable rate on the principal balance.

First Western brought suit against Lence to foreclose the note and deed of trust relating to the condominium and subsequently moved for summary judgment. The District Court found the undisputed facts to be essentially those stated above and granted summary judgment, concluding that First Western was entitled to judgment for the amounts owing and to have its deed of trust foreclosed judicially as provided by law. In addition, the court concluded that a deficiency judgment would be available to First Western in the event the sheriff's sale did not net sufficient funds to satisfy the debt. The deficiency judgment would be the difference between the fair market value of the property at the time of sale and the amount of the debt; a hearing would be held

3

for the purpose of determining the fair market value at that time. Lence appeals from the final judgment and decree of foreclosure entered March 3, 1992.

1. Did the District Court err in designating its Judgment and Decree of Foreclosure a final judgment?

The District Court entered its Judgment and Decree of Foreclosure on March 3, 1992; the Judgment included an order of sale at public auction and the right of First Western to a deficiency judgment if sale proceeds were insufficient. Lence argues that the Judgment and Decree of Foreclosure is not a final, appealable order.

In Federal Savings and Loan Ins. v. Hamilton (1989), 241 Mont. 367, 786 P.2d 1190, the mortgagors attempted a consolidated appeal from an amended order granting summary judgment, decree of foreclosure, and deficiency judgment to the mortgagee, and from a subsequent notice of entry of deficiency judgment in the amount of $99,306. In other words, they tried to appeal both the propriety and the amount of the deficiency judgment. We concluded that the amended summary judgment, decree of foreclosure and deficiency judgment was a final order under Rule 1, M.R.App.P. Therefore, we held that the appeal of the propriety of the deficiency judgment entered with the summary judgment and decree of foreclosure was not timely.

As we noted in Hamilton, foreclosure cases can involve two final orders: first, the judgment/decree of foreclosure, which may

4

contain the right to a deficiency judgment; and second, the actual entry of the deficiency judgment. Hamilton, 241 Mont. at 369. Here, the Judgment and Decree of Foreclosure is, indeed, a final judgment under Hamilton. The District Court did not err in so designating it.

2. Did the District Court err in concluding that a deficiency judgment is available following judicial foreclosure of a deed of trust securing a condominium not utilized as a primary residence?

We first addressed the availability of deficiency judgments after judicial foreclosure of trust deeds executed under Montana's Small Tract Financing Act (Act) in First State Bank of Forsyth v. Chunkapura (1987), 226 Mont. 54, 734 P.2d 1203. We traced the history of the legislature's adoption of the Act, considered decisions from other states with similar Acts on the question of the availability of deficiency judgments, and held that deficiency judgments are not allowed when trust indentures executed under the Act are foreclosed by judicial proceedings. Chunkapura, 226 Mont. at 56-58, 60-63. On rehearing, we carefully limited the opinion to the facts of that case, namely, that the trust deed before us "related to an occupied, single family residential property" and held that prospective deficiency judgments for like property would be invalid and of no effect. Chunkapura, 226 Mont. at 67.

We addressed the availability of deficiency judgments under the Act again in 1989, under somewhat different facts. In First Federal Savings & Loan v. Anderson (1989), 238 Mont. 296, 777 P.2d

5

1281, the lender also sought a deficiency judgment after judicial foreclosure of a trust deed under the Act. There, the Andersons had occupied the dwelling as a family residence for seven years, subsequently renting it for eighteen months while the property was for sale in order to continue making the payments to the lender. The lender argued that, because the Andersons no longer occupied the property themselves and, in fact, rented it to others, they were not entitled to the benefit of the Chunkapura holding. We disagreed, holding that the property fit the Chunkapura exception and that no deficiency judgment was available. Anderson, 238 Mont. at 301.

Again, in Wash.-Ida.-Mont. Retirement v. Galleria (1989), 239 Mont. 250, 780 P.2d 608, we addressed the availability of a deficiency judgment after judicial foreclosure of a trust indenture. In Galleria, however, the property at issue was commercial property. There, we noted that the Chunkapura limitation on the availability of deficiency judgments was limited to "trust deeds used as security for the financing of single dwelling, occupied homes (the type of financing for which the Small Tract Financing Act was argued to the legislature)." Galleria, 239 Mont. at 258. We held that the Chunkapura limitation on deficiency judgments did not apply to a trust indenture securing a purely commercial loan.

The facts before us in the present case are not qualitatively equivalent to those in Chunkapura or Anderson. Here, the trust deed secured property utilized as a second residence during the

6

summers; Lence concedes that his primary residence remained in Whitefish. He argues, however, that the property at issue is a single family residential property which, under Chunkapura, precludes the availability of a deficiency judgment. He further argues that the fact that he no longer occupies the property at all, but has rented it intermittently, brings him within the facts of Anderson. Lence's hypertechnical attempt to make his factual situation indistinguishable from Chunkapura and Anderson misses the thrust of those decisions.

Lence's condominium was never intended to be, or occupied as, his actual and primary residence. He purchased it as recreational or seasonal property and utilized it as such for several years. Under the laws of Montana, a person has one residence; the residence is "where one remains when not called elsewhere for labor or other special or temporary purpose. . . ." Section 1-1-215, MCA. Lence cannot have two legal "residences" in Montana--a primary residence in Whitefish and one to which he is "called for special purpose" in Lincoln County--and claim the benefits of the laws of Montana with regard to both. That is the result he seeks in asking this Court to preclude the availability of a deficiency judgment to First Western.

In Chunkapura and Anderson, we defined the property to which the limitation on deficiency judgments applied based on the facts before us in those cases. Both involved residential properties purchased and utilized as the family's primary residence. We conclude that the condominium at issue here, never intended or

7

occupied as Lence's primary residence, does not qualify for the limitation on deficiency judgments established in Chunkapura and Anderson. To accept Lence's argument would pervert the limited nature of the Chunkapura exception; it would allow a person to avoid the possibility of deficiency judgment on virtually unlimited numbers of properties by merely ensuring that each property was a residential unit and without regard to whether the property was ever intended or used as a personal, primary residence. Indeed, under Lence's interpretation of Anderson, it would not be necessary that the borrower ever occupy the properties, so long as they were occupied by someone. Such results were not contemplated or intended by Chunkapura and Anderson, and do not reflect the purpose for which the Small Tract Financing Act was adopted by the Montana legislature.

3. Did the District Court err in refusing to delay a sheriff's sale and determination of fair market value of the property in question pending the outcome of separate litigation?

The District Court determined that if the proceeds of the ordered sheriff's sale proved insufficient to pay the amounts owing to First Western and the expenses of the sale, a hearing would be held to determine the amount of the deficiency judgment, if any, to which First Western would be entitled. The purpose of the hearing would be to determine the fair market value of the property; the amount of any deficiency would then be based on the difference between the fair market value and the amount owing to First

8

Western. While the District Court did not so state, the procedures it ordered were those set forth by this Court for determining fair market value in Galleria.

Lence contends that the District Court erred in refusing to delay the sheriff's sale until the federal court litigation concerning the Crystal Lakes owners' access to resort facilities is completed. He cites no authority in support of this contention. He simply asserts that "the fair market value of the property can not be ascertained in this situation" and quotes a portion of First Western's appraisal report to the effect that the value is totally dependent on the future outcome of the federal lawsuit.

We do not disagree that the federal court litigation, if unresolved at the time of the sheriff's sale, may have a significant impact on the sale and the fair market value determination made by the District Court. This lack of disagreement does not equate, however, to agreement that the fair market value of the property cannot be ascertained.

All property has a fair market value; such a value is influenced by numerous factors and is always dependent, to some degree, on the moment in time at which the value is established. Indeed, while the appraisal report offered on behalf of First Western indicates the significance of the pendency of the federal litigation, that report goes on to make a fair market value determination under then-current circumstances, including the pending litigation. Simply put, it is the appraiser's job to make such valuations. We are confident that the District Court, aided

9

by the evidence presented by the parties and, presumably, their respective appraisers, will be able to determine the fair market value of the condominium after the sheriff's sale if the need arises.

Finally, we note that Lence has been in default on his obligations to First Western since December 1989. First Western cannot complete the judicial foreclosure and deficiency determination and collect the amounts to which it is entitled by law until such time as the present case reaches final resolution. There is no reason in law or in equity to further delay its ability to enforce its rights by awaiting the outcome of litigation in which it is not involved and over which it has no control. We hold that the District Court did not err in refusing to delay a sheriff's sale and determination of fair market value of the property pending the outcome of separate litigation.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

September 29, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


JOHN A. LENCE
Attorney at Law
69 North Main Street
Kalispell, MT 59901

Steven E. Cummings
MURPHY, ROBINSON, HECKATHORN & PHILLIPS
P.O. Box 759
Kalispell, MT 59903

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy