No. 92-267

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MIDFIRST BANK, STATE SAVINGS BANK,

     Plaintiff and Respondent,

  -vs-

LARRY D. RANIERI; UNITED STATES
OF AMERICA - DEPARTMENT OF THE
TREASURY - INTERNAL REVENUE SERVICE;
and STATE MONTANA - DEPARTMENT
OF REVENUE,

     Defendants and Appellant.



FILED

MAR 1 8 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Carl A. Hatch; Small, Hatch, Doubek & Pyfer,
        Helena, Montana

     For Respondent:

        Mark E. Noenning; Hendrickson, Everson & Noennin,
        Billings, Montana

Submitted on Briefs:  December 3, 1992

Decided:  March 18, 1993

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Larry Ranieri appeals from an order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Midfirst Bank. We affirm.

We state the issues on appeal as follows:

1) Did the District Court err in concluding that a deficiency judgment was available following judicial foreclosure of a deed of trust securing a single family dwelling that the borrower operated as rental property?

2) Did the District Court err in determining that Midfirst Bank could cancel nonjudicial foreclosure proceedings prior to the trustee's sale and elect to foreclose judicially?

The parties do not dispute the relevant facts in this case. Appellant Larry Ranieri (Ranieri) is a retired Army officer who has sold real estate and owned various rental properties. In 1982, Ranieri's daughter, Vicki, moved to Helena and purchased a townhouse located at 911 Hialeah in Helena. She attempted to finance the home through a HUD loan, but that financing fell through, leaving her with monthly payments significantly higher than anticipated. In July of 1983, Vicki moved to Wisconsin, and asked her father to either sell or rent the townhouse to cover the monthly loan payments. Ranieri obliged, although the rent he received was about $200 less than the monthly payment. In January of 1984, Ranieri began paying the difference between the rent and the loan payment for his daughter. He also claimed rental income and depreciated the property for tax purposes beginning in 1984.

2

In October of 1985, Ranieri attempted to refinance Vicki's loan in his name in hopes of lowering the monthly payments and possibly moving into the townhouse until he sold it. He withdrew his application, however, when his wife refused to move into the townhouse. Six days later, Ranieri accepted a warranty deed for the townhouse from his daughter.

Renters continued to occupy the townhouse. Between renters in April of 1985, Ranieri stayed at the townhouse for approximately fifteen days while briefly separated from his wife. After reconciling, his wife agreed to move into the townhouse, and Ranieri again applied for refinancing. On November 4, 1985, he executed a Note and Trust Indenture to Midfirst Bank (Midfirst) to secure the new loan. Prior to closing, however, his wife rented another home; Ranieri and his wife did not move into the townhouse as planned. The current renters continued to reside at 911 Hialeah.

Shortly after the refinancing was completed, the Ranieris separated for approximately one year. During this separation, Ranieri lived with a friend or in his real estate office, "sleeping out of a suitcase." Between renters, he stayed at the townhouse twice, for approximately a week each time. He collected mail at his real estate office, however, and considered it his permanent residence.

Throughout his ownership of the townhouse, Ranieri rented the townhouse to various tenants. From 1984 through 1990, Ranieri claimed rental income, depreciation and business deductions

3

generated by the townhouse on his federal and state income tax returns. In total, he claimed in excess of $20,000 in rental income and over $50,000 of deductions.

Ranieri defaulted on the trust indenture on November 1, 1989. In September of 1990, Midfirst initiated a nonjudicial foreclosure and sent notice of the trustee's sale; the sale was postponed once and then canceled altogether. Ranieri made no further payments. Midfirst then initiated judicial foreclosure proceedings. On November 9, 1990, Midfirst filed a complaint seeking a personal judgment and a deficiency judgment against Ranieri. Both parties moved for summary judgment. The District Court granted summary judgment for Midfirst, and entered a judgment and decree of foreclosure on April 27, 1992. Ranieri appeals.

Did the District Court err in concluding that a deficiency judgment was available following judicial foreclosure of a deed of trust securing a single family dwelling that the borrower operated as rental property?

Summary judgment is appropriate if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In this case, the parties do not dispute any genuine issue of material fact. Therefore, we review the District Court's legal conclusions to determine if they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

The District Court concluded that Midfirst could collect a deficiency judgment following judicial foreclosure of Ranieri's trust indenture. The court determined that Ranieri did not qualify for the exception to deficiency judgments set out by this Court in

4

First State Bank of Forsyth v. Chunkapura (1987), 226 Mont. 54, 734 P.2d 1203, which prohibits deficiency judgments following judicial foreclosure of trust indentures secured by occupied, single family residential property. The court reasoned that, because Ranieri resided at the townhouse for an insignificant amount of time and collected rents and depreciated the property, the Chunkapura exception did not apply.

On appeal, Ranieri argues that collecting rent from the property to make the loan payment does not make the property commercial in nature; therefore, he asserts, the rental of the townhouse does not prevent him from invoking the Chunkapura exception. He also argues that renters can occupy the property without disqualifying the borrower from Chunkapura's protection, claiming that his intent to make the townhouse his residence should bring him within Chunkapura.

In Chunkapura, we held that a creditor seeking judicial foreclosure of an occupied, single family residential home secured by a trust deed cannot obtain a deficiency judgment. Chunkapura, 734 P.2d at 1211. Interpreting Montana's Small Tract Financing Act, we concluded that a deficiency judgment under those circumstances would be inconsistent with the provisions and legislative intent of the Act. On rehearing, we carefully limited the holding to the facts of Chunkapura--a trust deed secured by an occupied, single family residential property--and expressly excluded those trust deeds securing loans in commercial settings. Chunkapura, 734 P.2d at 1211.

5

We subsequently have interpreted Chunkapura in relation to three different factual scenarios. We refused to apply Chunkapura to a trust deed securing a commercial warehouse in Carpenters Employers Retirement Trust v. Galleria Partnership (1989), 239 Mont. 250, 780 P.2d 608. We stated that the limited holding of Chunkapura did not apply to a purely commercial loan. Galleria, 780 P.2d at 613.

Here, Ranieri has operated the townhouse as a rental unit since he obtained title from his daughter. He has claimed rental income and taken significant deductions on his federal income taxes related to the townhouse. The Internal Revenue Code allows these deductions only if incurred in the taxpayer's trade or business or for the production of income. See 26 U.S.C. §§ 162-167. Ranieri's tax returns evidence his own perceptions and intentions regarding the commercial nature of the townhouse.

Ranieri disagrees that the townhouse is commercial in nature. He argues that our decision in First Fed. Sav. & Loan v. Anderson (1989), 238 Mont. 296, 777 P.2d 1281, allows the borrower to rent out the property without changing its residential character to commercial. Ranieri overstates our fact-specific holding in Anderson.

In Anderson, the family executed a trust deed to secure their residential dwelling, which they occupied for the following seven years. When they put the property up for sale, they rented it out for eighteen months to make the payments. Anderson, 777 P.2d at 1282. We concluded that when the lender accepted the trust

6

indenture, the deed related to occupied, single family residential property, and the fact that the family had rented it out briefly before sale did not preclude application of Chunkapura. Anderson, 777 P.2d at 1284.

Anderson involved residential property purchased and occupied as the family's primary residence; the family purchased the home with the loan secured by the trust indenture and immediately occupied it. In contrast, when Midfirst accepted the trust deed from Ranieri, Ranieri was operating the property as a rental unit, as he had for the preceding two years; indeed, he has never resided permanently in the townhouse. In addition, the eighteen month rental period prior to sale in Anderson, which followed a seven year occupation of the property as a residential dwelling, does not compare to the seven year rental arrangement managed by Ranieri. At the time of the trust indenture, Ranieri operated the townhouse as a rental unit, generating income and tax deductions, and he continued to do so throughout his ownership of the property. We conclude that the townhouse is commercial in nature.

Ranieri also contends that Chunkapura does not require that the borrower reside in the property. We addressed this argument recently in First Western Fed. Sav. Bank v. Lence (Mont. 1992), 839 P.2d 1277, 49 St.Rep. 857. In Lence, the borrower purchased a condominium at Crystal Lake and secured the loan with a deed of trust. His primary residence was in Whitefish, although from 1977 to 1985, he spent the summer months at the condominium; he also rented it out intermittently in 1990. Lence defaulted and the

lender instituted judicial foreclosure proceedings, seeking a deficiency judgment. Lence, 839 P.2d at 1278.

In allowing a deficiency judgment against Lence, we first focused on Lence's admission that the condominium was not his primary residence. Under Montana law, a person has only one legal residence, and we concluded that the Chunkapura protection against deficiency judgments applies solely to that one legal residence. We also distinguished the nature of Lence's summer condominium from the residential properties in Chunkapura and Anderson, which were purchased and utilized as the families' primary residence. We stated:

> We conclude that the condominium at issue here, never intended or occupied as Lence's primary residence, does not qualify for the limitation on deficiency judgments established in Chunkapura and Anderson. To accept Lence's argument would pervert the limited nature of the Chunkapura exception; it would allow a person to avoid the possibility of deficiency judgment on virtually unlimited numbers of properties by merely ensuring that each property was a residential unit and without regard to whether the property was ever intended or used as a personal, primary residence. Indeed, under Lence's interpretation of Anderson, it would not be necessary that the borrower ever occupy the properties, so long as they were occupied by someone. Such results were not contemplated or intended by Chunkapura and Anderson. . . .

Lence, 839 P.2d at 1280. Thus, we rejected in Lence Ranieri's argument that Chunkapura applies if renters, rather than the borrower, occupy the property. Our decision in Lence requires that the property secured by the trust deed be the borrower's actual, personal, primary residence.

As in Lence, the townhouse was never Ranieri's actual, personal, primary residence. Ranieri admits that the townhouse was

8

not his primary residence; even during the times of separation from his wife, he considered his real estate office his primary residence. Even though Ranieri has claimed a continuing intent to move into the townhouse, this intent did not materialize. Ranieri has spent, at the most, one month at the townhouse over the seven year span. As such, pursuant to Lence, the Chunkapura exception does not apply.

In sum, the Chunkapura exception is limited to single family residential property occupied by the borrower as his or her primary legal residence. As discussed, Ranieri has not "occupied" the property, as required by our decision in Lence. Further, the townhouse is commercial, not residential, property in Ranieri's hands. Thus, Ranieri is not eligible for the Chunkapura protection from a deficiency judgment. We hold that the District Court did not err in concluding that Midfirst was entitled to a deficiency judgment after judicial foreclosure of Ranieri's trust indenture.

Did the District Court err in determining that Midfirst Bank could cancel nonjudicial foreclosure proceedings prior to the trustee's sale and elect to foreclose judicially?

The District Court concluded that no provision in the Small Tract Financing Act prohibited Midfirst from canceling nonjudicial foreclosure and initiating judicial foreclosure proceedings against Ranieri. Ranieri contends that because Midfirst initiated nonjudicial foreclosure proceedings under the Small Tract Financing Act, it elected its remedy and could not thereafter cancel those proceedings and begin judicial foreclosure proceedings.

Ranieri bases his argument primarily on § 71-3-315, MCA, which

9

reads in pertinent part:

**Notice - sale - payment.** A trust deed _may_ be foreclosed by advertisement and sale in the manner hereinafter provided: . . .

(3) On the date and at the time and place designated in the notice of sale, the trustee or his attorney <u>shall</u> sell the property at public auction to the highest bidder. . . . [Emphasis added.]

He concedes that the permissive "may" in the introductory language gives the trustee the <u>option</u> of foreclosing by advertisement and sale; he contends, however, that once that option is chosen, the word "shall" in subsection (3) requires that the trustee complete the trustee's sale and all other procedures of nonjudicial foreclosure.

A straightforward reading of the statute mandates our conclusion that the term "shall" in subsection (3), and throughout the remainder of § 71-1-315, MCA, merely describes the requisite procedures a trustee must follow _if_ a sale is held. Here, the trustee's sale was not held; thus, those requirements are not applicable. The Small Tract Financing Act does not contain any provision prohibiting a trustee from canceling a noticed sale.

Ranieri bases his next argument on § 71-1-312, MCA, which allows the trustee to cancel nonjudicial foreclosure proceedings when the debtor pays the entire amount in arrears. He argues that because this statute describes a situation in which a trustee's sale may be canceled, a trustee cannot cancel a sale for any other reason. Ranieri claims that because he did not pay the arrearage, Midfirst cannot cancel the sale. Again, Ranieri misinterprets the statute and the purposes behind it.

10

Section 71-1-312, MCA, represents one of the distinguishing factors of nonjudicial foreclosure. Under traditional mortgage law, payment of the entire balance of the loan is required to halt foreclosure proceedings once instituted. With nonjudicial foreclosure, payment of only the amount in arrears reinstates the trust indenture. See Dietrich, David S., *The Montana Judicial and Non-Judicial Foreclosure Sale: Analysis and Suggestions for Reform*, 49 MONT.L.REV. 285, 294-297. Section 71-1-312, MCA, merely codifies this unique aspect of trust indentures.

Ranieri's interpretation of the Act would preclude a trustee from canceling a sale if the debtor paid off the entire obligation or if the lender chose for whatever reason to release the debtor from the obligation. The "quid pro quo" which supported the enactment of the Small Tract Financing Act did not include this concession by borrowers; Ranieri's interpretation would restrict trustees and burden borrowers to an extent not contemplated by the legislature. See Chunkapura, 734 P.2d at 1210; Dietrich, p. 295.

Finally, Ranieri contends that the legal doctrine of "election of remedies" bars Midfirst's subsequent judicial foreclosure. Ranieri argues that by sending out the notice for the trustee's sale, Midfirst waived its remedy of judicial foreclosure.

As a legal doctrine, election of remedies is the exercise of a choice of an alternative and inconsistent right or course of action. Massett v. Anaconda Copper Co. (1981), 193 Mont. 131, 136, 630 P.2d 736, 739. It is well settled in Montana that an election exists only when a remedy is pursued to a final conclusion. State

11

ex. rel Crowley v. District Court (1939), 108 Mont. 89, 96, 88 P.2d 23, 26; Glacier Campground v. Wild Rivers, Inc. (1978), 182 Mont. 389, 401, 597 P.2d 689, 695.

Here, although Midfirst sent notice of the trustee's sale, it did not pursue this remedy to its final conclusion. As such, Midfirst's initiation of nonjudicial foreclosure proceedings, later abandoned, did not constitute an election of remedies that precluded judicial foreclosure proceedings.

We conclude that the District Court did not err in concluding that Midfirst could cancel nonjudicial foreclosure proceedings prior to the trustee's sale and proceed with judicial foreclosure.

Affirmed

Justice

We concur:

Justices

12

March 18, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Carl A. Hatch
SMALL, HATCH, DOUBEK & PYFER
Livery Square
39 Neil Avenue
Helena, MT 59601

MARK E. NOENNING
Attorney at Law
324 Hart-Albin Building
Billings, MT 59101

Bruce R. McGinnis, Tax Counsel
Department of Revenue
Mitchell Building
Helena, MT 59620

Bernard F. Hubley
Attorney at Law
6915 Bristol Lane
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy