No. 91-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

FIRST SECURITY BANK OF HAVRE,
a corporation,

Plaintiff, Respondent and
Cross-Appellant,

-vs-

RONALD M. HARMON, GERALD W. RIDGEWAY,
NORTHERN INSURANCE AGENCY, a corporation,
and THE UNITED STATES OF AMERICA,

Defendants and Appellants.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Leonard H. Langen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Douglas C. Allen, Attorney at Law, Great Falls,
Montana
A. Clifford Edwards, Edwards & Paoli, Billings,
Montana

For Respondent:

Kathleen H. Richardson, Morrison, Hauge, Ober &
Young, Havre, Montana

FILED

NOV 12 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT.
STATE OF MONTANA

Submitted on Briefs:   August 13, 1992

Decided:   November 12, 1992

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Twelfth Judicial District, County of Hill, the Honorable Leonard H. Langen presiding. Appellant Ronald M. Harmon (Harmon) appeals from an order granting the respondent, First Security Bank of Havre (First Security) summary judgment in its action to collect on a promissory note executed by Harmon on August 3, 1981 in the original amount of $283,242.93. We hold that Harmon's failure to file a timely notice of appeal prevents this Court from acquiring jurisdiction over his appeal.

BACKGROUND

In 1981, Harmon was the sole owner and stockholder of Big Bud Tractors, Inc., and its wholly owned subsidiary, Big Bud Sales and Services, Inc. (collectively Big Bud). Harmon and Big Bud were indebted to First Security and its correspondent, Seattle First National Bank (Sea-First). In July 1981, to avoid foreclosure, Harmon and Big Bud executed a settlement agreement with the two banks. Under the terms of this agreement, Harmon and Big Bud conveyed all of their assets to First Security and Sea-First. The banks agreed to reconvey these assets after Harmon and Big Bud paid approximately $3 million. Whether this money was paid, and whether the banks were obligated to reconvey the Harmon-Big Bud assets, were unresolved issues between the parties. Harmon contends now that the promissory note executed in August 1981 was part of the July 1981 settlement agreement and represents a "rewriting" of Harmon's obligation to First Security. First Security contends that the August 1981 promissory note was not part of the settlement

2

agreement.

In April 1982, Harmon and Big Bud filed suit against the two banks in United States District Court for the District of Montana, Great Falls Division (Adversary No. 482-0113). Their allegations included breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. First Security counterclaimed on all promissory notes of Big Bud and Harmon, except for the note at issue in the case before this Court.

Judgment on the federal jury verdict was entered on February 28, 1990. The jury, responding to special interrogatories, found that the banks had not committed fraud or breached their settlement agreement with Harmon and Big Bud; that the banks had breached a fiduciary duty in dealing with Harmon and Big Bud; and that this breach was not a proximate cause of damage to Big Bud or Harmon. The jury also found that First Security was not entitled to recover any money on its counterclaim.

The promissory note on which First Security is now attempting to collect was secured by a trust indenture conveying 3.92 acres of land along U.S. Highway 2 in Hill County. Harmon stated in his District Court brief that this was his "last piece of property not previously conveyed to the Banks." Harmon had a 52.5 percent undivided interest in this land, having conveyed a 47.5 percent interest to Gerald Ridgeway in 1979.

From 1981 through 1985, Harmon failed to pay property taxes on the indentured property. Under the terms of the note, failure

3

to pay taxes constituted a default, and on November 14, 1985, First Security declared that all sums owing on the note were due and payable. As of December 1, 1985, Harmon's debt included the original principal plus $108,211.40 in interest, with interest accruing at the rate of $93.13 per day. On May 30, 1986, First Security filed this collection action seeking, in addition to judgment for the amount of the debt, partition of Ridgeway's portion of the indentured property and a foreclosure sale of Harmon's portion.

The Harmon-Big Bud federal case was still pending in April 1988, when Judge Langen held a scheduling conference on First Security's state court action. The parties agreed then to abate the action until the federal case was tried, though the First Security attorney expressed concern that Hill County would "move for a tax deed" as the unpaid taxes on the property continued to increase. In fact, the county did issue a tax deed in October 1989, and in May 1990 the county quitclaimed the indentured property to a third party.

In June 1990 First Security moved for summary judgment based on the verdict in federal court. After a hearing by conference telephone call in February 1991, Judge Langen ordered that judgment for First Security be entered but not executed on until Harmon's appeal from the federal court verdict was concluded. The judgment, entered on March 21, 1991, was in the amount of $596,288.03 plus $9,429.89 for attorney's fees, $204.25 for costs, and interest at 12 percent from and after the date of entry of judgment. With

4

respect to the other defendants, the court found that Ridgeway's interest was foreclosed by the Hill County tax deed and that the Northern Insurance Agency and the United States (Internal Revenue Service) had disclaimed any interest in the litigation and had been dismissed as parties in September 1986, and April 1987, respectively.

## THE DISPOSITIVE ISSUE

The critical issue in this case is whether Harmon's untimely notice of appeal prevents the Supreme Court from obtaining jurisdiction over the appeal. Finding that it does, we dismiss this appeal without deciding the other issues raised by the parties.

Harmon filed a motion to alter or amend the judgment on March 29, 1991, well within the ten-day limit established by M.R.Civ.P. 59(g). On April 12, 1991, Harmon moved for an extension of time to file a brief in support of his motion to amend. Judge Langen extended the time through April 30, 1991. On April 30, 1991, Harmon again moved for an extension of time to file his brief, and again Judge Langen ordered an extension, this time through May 10, 1991. On May 13, 1991, Harmon filed a third motion for an extension of time, but Judge Langen did not enter a corresponding order. Harmon filed his brief on May 21, 1991.

Under M.R.Civ.P. 59(g), a motion to alter or amend a judgment is deemed denied if the court fails to rule on the motion within forty-five days from the time it is filed. Thus, Harmon's motion to amend or alter the judgment against him was deemed denied on or

about May 15, 1991.

A party must file notice of appeal within thirty days from the date that a motion to alter or amend the judgment is deemed denied. Rule 5(a)(4), M.R.App.P. Applied here, this rule required Harmon to file notice of appeal by June 14, 1991. Instead, Harmon waited until July 9, 1991 to move for an extension of time to file a notice of appeal. Judge Langen granted this motion on October 16, 1991, extending the deadline to October 27, and Harmon filed notice of appeal on October 23, 1991.

Under M.R.App.P. 5(a)(5), the court may extend the time for filing a notice of appeal "upon a showing of excusable neglect or good cause," in response to a motion filed "not later than 30 days after the expiration of the time prescribed by this Rule 5(a)." Here, Harmon filed his motion for an extension of time within the prescribed thirty-day limit, but he made no showing of excusable neglect or good cause.

The time limits for an appeal are mandatory and jurisdictional. "An appellant has a duty to perfect an appeal in the manner and within the time limits provided by law. Absent such compliance, this Court does not acquire jurisdiction to entertain and determine an appeal." Price v. Zunchich (1980), 188 Mont. 230, 235, 612 P.2d 1296, 1299. See Anderson v. Bashey (1990), 241 Mont. 252, 787 P.2d 304 (plaintiff's motion to reconsider was filed one day too late and therefore failed to suspend the thirty-day limit for filing notice of appeal); Easeley v. Burlington Northern R.R. (1988), 234 Mont. 290, 762 P.2d 870 (plaintiff's appeal denied

6

because he filed notice of appeal more than thirty days after his motion for reconsideration was deemed denied). Further, the party attempting to appeal is not entitled to notice that a post-trial motion is deemed denied. Mortensen Construction Co. v. Burlington Northern, Inc. (1985), 218 Mont. 415, 417, 708 P.2d 1006, 1007.

The court may extend the deadline for filing notice of appeal by no more than thirty days past the prescribed time or ten days from the date of entry of the order granting the motion. M.R.App.P. 5(a)(5). Here, the thirty-day period expired on July 14, 1991. Judge Langen did extend the deadline for only ten days from the date his order granting Harmon's motion was entered, as the rule requires, but his order was entered on October 16, three months after the thirty-day period prescribed by M.R.App.P. 5(a)(5) had expired. By then, the court had lost its authority to grant such an extension. Zell v. Zell (1977), 172 Mont. 496, 500, 565 P.2d 311, 313 ("[T]he district court loses its authority to grant such an extension after the additional 30 day period expires."); Northwestern Nat'l. Ins. Co. v. Agra Steel Corp. (1981), 193 Mont. 437, 439, 632 P.2d 330, 332 (maximum allowable time within which the district court could grant an extension of time for filing notice of appeal expired thirty days after the original thirty-day limit expired).

In his brief supporting the motion, Harmon stated:

[C]ounsel for Harmon were unaware that his pending motion was deemed denied by operation of law on or about May 15, 1991, but were under the impression that the motion was still pending for ruling. This impression was fostered by Plaintiff's counsel having moved after [May 15] for an extension of time to file a brief in opposition to the

7

motions.

Harmon went on to indicate that it was not until June 14, 1991, when First Security filed its brief opposing an extension of time, that he realized his motion had been deemed denied since mid-May.

Failure to timely file notice of appeal is a fatal defect cured only by the "most extenuating circumstances." Montana Power Co. v. Fondren (1987), 226 Mont. 500, 505, 737 P.2d 1138, 1141. We find no such circumstances here, as Harmon has shown only that he was "unaware" of M.R.Civ.P. 59(g).

Under Rule 5, M.R.App.P., Harmon was required to perfect his appeal within the time limits provided by law. Since he has failed to do so, this Court did not acquire jurisdiction to entertain his appeal. Accordingly, it is hereby ordered that this appeal be dismissed as not having been timely filed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

8

November 12, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DOUGLAS C. ALLEN
Attorney at Law
P.O. Box 2886
Great Falls, MT 59403

A. Clifford Edwards
EDWARDS & PAOLI
P.O. Box 20039
Billings, MT 59403-0039


Kathleen H. Richardson
MORRISON, YOUNG, MELCHER, BROWN & RICHARDSON
P.O. Box 1070
Havre, Montana 59501

PHILLIP McGIMPSEY
Attorney at Law
P.O. Box 1500
Billings, MT 59103


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy