No. 98-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 76

294 Mont. 64

979 P.2d 180

BANK OF BAKER,

Plaintiff and Respondent,

v.

MIKELSON LAND COMPANY, R.A. MIKELSON,

WILLISTON BASIN INTERSTATE PIPELINE COMPANY,

FALLON COUNTY TREASURER, et al.,

Defendants and Appellants.

No

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Fallon,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Peter T. Stanley, Attorney at Law, Billings, Montana

For Respondent:

Carey E. Matovich; Matovich & Keller, Billings, Montana

Submitted on Briefs: November 5, 1998

Decided: April 20, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Mikelson Land Company and its owner, R.A. Mikelson (collectively, Mikelson), appeal from a deficiency judgment and the underlying findings of fact, conclusions of law and order entered by the Sixteenth Judicial District Court, Fallon County. We affirm and remand.**

**¶2. Mikelson raises the following issues on appeal:**

**¶3. 1. Whether the District Court erred in concluding that proper notice of the sale was given.**

**¶4. 2. Whether the District Court erred in valuing the real property.**

**¶5. 3. Whether the District Court erred in determining the Bank of Baker's entitlement to a deficiency.**

**¶6. 4. Whether the District Court erred in calculating interest.**

*BACKGROUND*

**¶7. In 1986, Mikelson executed a promissory note to the Bank of Baker (Bank) in the principal amount of $93,041.08, at 10.5 percent interest per annum, in exchange for a**

loan in the same amount. Mikelson also executed a deed of trust indenture on real property to the Bank to secure the new loan. The real property contained a large vacant structure, a smaller structure housing the town's only liquor store and a parking lot.

¶8. Mikelson stopped making payments under the promissory note in September of 1989, at which time the balance was $85,289.03. Mikelson also failed to pay the real estate taxes levied on the real property from 1987 to 1992.

¶9. The Bank filed a foreclosure action against Mikelson and other defendants not involved in this appeal in 1993. Discovery ensued, motions were filed and resolved, and the case was tried to the District Court on August 9, 1994. The District Court entered its findings of fact, conclusions of law and order in favor of the Bank on January 2, 1996, and entered judgment thereon February 10, 1997. The total judgment was for $170,507.41, which included the principal amount remaining due on the promissory note of $85,289.03, $66,073.30 in interest, and attorneys' fees and costs of $19,145.07. The District Court also ordered the Fallon County Sheriff to sell the real property according to law and concluded that, if the proceeds of the sale did not satisfy the $170,507.41 judgment, the Bank would be entitled to a deficiency judgment against Mikelson.

¶10. The Sheriff posted notices of the sale at four different locations in Baker, including next to the main door of the large vacant structure on the real property. Neither Mikelson nor Mikelson's counsel was personally served with notice of the sale.

¶11. The real property was sold on July 7, 1997. Two parties, both unaffiliated with the Bank, submitted bids. The high bidder paid $10,000 for the property and those sale proceeds were applied to Mikelson's unpaid taxes, which totaled $21,112.17 at the time of the sale. The remaining tax obligation transferred with the property to the new owner. Thus, the effective price paid for the real property was $21,112.17.

¶12. Following the sale, the Bank moved for a determination of the amount of the deficiency and Mikelson moved to set aside the sale and in opposition to entry of a deficiency. The District Court held a hearing on October 28, 1997, and both parties presented testimony on the value of the real property. Mikelson's expert witness opined that the intrinsic value of the property when sold was $101,500, but that his

intrinsic value amount was not equivalent to fair market value. The Bank's expert witness appraised the property at between zero and $21,000.

¶13. On February 23, 1998, the District Court entered its findings of fact, conclusions of law and order implicitly denying Mikelson's motions to set aside the sale and in opposition to entry of a deficiency, and determining that the fair market value of the real property was equal to or less than the $21,112.17 in accrued taxes, penalties and interest as of the date of the sale. On that basis, the court concluded that the Bank was entitled to a deficiency judgment against Mikelson in the amount of $197,690.49, which included the judgment amount entered February 10, 1997, interest on that judgment at 10.5 percent interest per annum to the date of the hearing on October 28, 1997, in the amount of $12,753, and additional attorneys' fees and costs in the amount of $14,430.08. On February 27, 1998, the District Court entered a final deficiency judgment against Mikelson in the amount of $199,193.64, and Mikelson appeals.

## DISCUSSION

¶14. **1. Did the District Court err in concluding that proper notice of the sale was given?**

¶15. Mikelson's motion to set aside the sale was premised on two alleged inadequacies in the notices of the sale of the real property. The District Court implicitly denied the motion, concluding that the locations where the Sheriff posted the notices of sale met the requirements of § 25-13-701(1)(c), MCA, and that the law does not require that notice be personally served on Mikelson or Mikelson's counsel. Mikelson asserts error regarding both of the court's conclusions, and we review a district court's legal conclusions to determine whether the interpretation of the law is correct. *See* Choteau Library Bd. v. Teton County Bd. (1997), 283 Mont. 87, 90, 938 P.2d 1357, 1359.

¶16. Mikelson's first contention is that the notice posted next to the main door of the large vacant building on the real property was in a private place rather than a public place as required by § 25-13-701(1)(c), MCA, because the building was not open to the public. We disagree.

¶17. Section 25-13-701(1)(c), MCA, mandates that notice of a sheriff's sale of

property must be posted "in three public places in the county where the property is situated. . . ." The term "public place" means a place where the general public has a right to go and to be. Territory v. Lannon (1889), 9 Mont. 1, 4, 22 P. 495, 496. A "public place" also is defined as a "place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private. . . ." Black's Law Dictionary 1230 (6th ed. 1990).

¶18. The record before us reflects that the notice posted next to the main door of the large vacant structure on the real property was located in Baker's shopping area, across the street from the United States Post Office, next door to the County Attorney's office and just west of the only liquor store in town. Moreover, the building on which the notice was posted was immediately adjacent to a publicly traveled road and sidewalk. Thus, while it is true that the notice was posted on a privately owned building, the notice need only be posted in a location where the public had a right to be. *See Lannon*, 9 Mont. at 4, 22 P. at 496. The public clearly had access to the notice posted next to the main door of the large vacant structure; in fact, the successful bidder learned of the sale from that very notice. As a result, we conclude that the notice at issue was posted in a public place and we hold that the District Court did not err in concluding that the Sheriff complied with the notice requirements contained in § 25-13-701(1)(c), MCA.

¶19. Mikelson's second contention, largely undeveloped, is that Rules 81(c) and 5(a), M.R.Civ.P., read together, required the Bank to serve either Mikelson or Mikelson's counsel with notice of the sale. Again, we disagree.

¶20. The Montana Rules of Civil Procedure were enacted in 1961, and Rule 81(c), M.R.Civ.P., was enacted as part of the "General Provisions" of those Rules. It provides that any pre-existing statute requiring any act in a district court civil proceeding to "be done in the manner provided by law . . . or as provided by any statute superseded by these rules" is to be done in accordance with the newly enacted civil procedure rules. Rule 81(c), M.R.Civ.P. Rule 5(a), M.R.Civ.P., provides, in part:

Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which

may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.

**¶21. While Mikelson's argument relating to these rules is less than clear, it is clear that they do not--either standing alone or taken together--require service of the notice of the sale on Mikelson or Mikelson's counsel. Nothing in the statutes governing execution sales and notice thereof renders acts associated with execution sales acts** in a district court civil proceeding, as contemplated by Rule 81(c), M.R.Civ.P. Similarly, the Rule 5(a), M.R.Civ.P., requirement that every written notice be served on all parties relates only to written notices within a district court civil proceeding. That requirement does not relate to execution sales, which are governed by the notice requirements contained in § 25-13-701, MCA, which--as discussed above--were met here.

**¶22. Mikelson further argues that the District Court erred in relying on Kansas City Life Ins. Co. v. Bratsky Farms (1989), 238 Mont. 398, 778 P.2d 859, as support for its conclusion that the Sheriff was not required to personally serve Mikelson or Mikelson's counsel with the notice of the sale. The record reflects, however, that the District Court concluded that nothing in § 25-13-701, MCA, required the Sheriff to personally serve the notice of sale and, indeed, Mikelson does not contend otherwise with regard to the statute. While the District Court did go on to address perceived similarities between the present case and *Kansas City*, *Kansas City* was not necessary to the Court's conclusion that the statute does not require personal service and, as a result, we need not discuss that case in resolving this issue.**

**¶23. Here, the Sheriff complied with the § 25-13-701, MCA, notice requirements for the sale of real property and nothing in that statute or the rules of civil procedure discussed above required personal service of the notice on Mikelson or Mikelson's counsel. We hold, therefore, that the District Court did not err in concluding that proper notice of the sale was given.**

**¶24.** 2. Did the District Court err in valuing the real property?

**¶25. The District Court determined that the fair market value of the real property was equal to or less than $21,112.17. While the District Court improperly denominated that determination as a conclusion of law, valuations are questions of fact which we ordinarily review under a clearly erroneous standard, determining first whether the finding is supported by substantial credible evidence. *See* Carpenters-Emp. Ret. Tr. v. Galleria Part. (1991), 250 Mont. 175, 184, 819 P.2d 158,**

163 (citation omitted) (*Galleria II*). Here, however, Mikelson does not contend that the District Court's fair market value finding is insufficiently supported by the record.

¶26. Mikelson argues that the District Court applied the wrong valuation test by relying solely on fair market value--that is, the $21,112.17 effectively paid by the purchaser--instead of determining the real property's "intrinsic value" as set forth in Carpenters-Emp. Ret. Tr. v. Galleria Part. (1989), 239 Mont. 250, 780 P.2d 608 (*Galleria I*), and *Galleria II*. We review a district court's legal conclusion--including its application of the law to the facts--to determine whether the interpretation of the law is correct. *See* Smith v. General Mills, Inc., 1998 MT 280, ¶ 11, 968 P.2d 723, ¶ 11, 55 St.Rep. 1151, ¶ 11 (citation omitted).

¶27. In *Galleria I*, a group of investors defaulted on a promissory note for a $1.2 million loan which was secured by a trust indenture on commercial property and the district court entered a decree of foreclosure directing the sheriff to sell the property. *Galleria I*, 239 Mont. at 255, 780 P.2d at 611. The beneficiaries of the trust indenture (hereinafter the Trustees) submitted the sole bid at the sale, in the amount of $565,000, which was approximately 30 percent of the original appraised value of the property. *Galleria I*, 239 Mont. at 256, 264, 780 P.2d at 611, 616. In calculating the approximately $1.5 million deficiency owed by the investors, the district court apparently relied solely on the amount at which the property sold at foreclosure in determining the property's fair market value. *See Galleria I*, 239 Mont. at 264, 780 P.2d at 616.

¶28. On appeal, we expressed concern over the amount of the deficiency judgment in relation to the promissory note, that the Trustees submitted the sole bid at the foreclosure sale and that the Trustees' purchasing bid was for only 30 percent of the property's originally appraised value. *Galleria I*, 239 Mont. at 263-65, 780 P.2d at 616-17. Observing that foreclosure proceedings are within our equity jurisdiction, which includes the power to fashion equitable results, we remanded to the district court for a determination of the property's fair market value at the time of the sale and a redetermination of the amount of any deficiency judgment. *Galleria I*, 239 Mont. at 265-66, 780 P.2d at 617. In doing so, we defined "fair market" as "the intrinsic value of the real property with its improvements at the time of sale under judicial foreclosure, without consideration of the impact of the foreclosure proceedings on the fair market value." *Galleria I*, 239 Mont. at 265, 780 P.2d at 617

(citation omitted). Importantly, we left the method of determining fair market value to the district court. *See Galleria I*, 239 Mont. at 265, 780 P.2d at 617.

¶29. On remand, the district court received expert evidence utilizing various appraisal methods for valuing the commercial property--including market, income and cost approaches--and determined that the value of the property was $1,100,000. *Galleria II*, 250 Mont. at 179-83, 819 P.2d at 161-65. In doing so, the court rejected a valuation which the Trustees claimed represented "a fair determination of intrinsic value," but which was not an appraisal. *Galleria II*, 250 Mont. at 186-87, 819 P.2d at 165. Both parties appealed. We observed that, under normal conditions

the "fair value," or "intrinsic value," of property will often coincide with its fair market value, the value a willing purchaser will pay to a willing seller in an open market. [Rainer Mortgage v. Silverwood Ltd. (Cal.App. 3 Dist. 1985), 209 Cal.Rptr. 294, 298.] The court explained:

"This correlation is not fixed, however, and market value is only *one factor* the court should consider when determining 'fair value.' ... '[F]air value' is to be determined *by all of the circumstances affecting the intrinsic value of the property at the time of the sale*. This necessarily excludes the circumstances of the foreclosure sale."

*Galleria II*, 250 Mont. at 185, 819 P.2d at 164 (quoting Rainer, 209 Cal.Rptr. at 298). We ultimately affirmed the district court's determination that the value of the property was $1,100,000. Galleria II, 250 Mont. at 187, 819 P.2d at 165.

¶30. Here, the District Court determined that, because the property was sold to a party unaffiliated with the Bank, the $21,112.17 effectively paid for the property was *prima facie* evidence of its fair market value under the traditional willing buyer-willing seller approach. There is no doubt that, under the *Galleria* cases, the purchase price was one factor for the court to consider in determining the fair market value of the real property. *See, e.g., Galleria II*, 250 Mont. at 185, 819 P.2d at 164.

¶31. In addition, the District Court noted that the Bank's expert separately appraised the real property based on market, income and cost approaches and, on those bases, established the fair market value of the property at between zero and $21,000. These

are the same appraisal approaches presented in *Galleria II* and determined to comprise substantial evidence of the property's fair market value. *See Galleria II*, 250 Mont. at 182, 186, 819 P.2d at 162, 165. We have located nothing in the record which indicates that either the effective purchase price or the Bank's expert's appraisal was tainted in any way by consideration of the impact of the foreclosure proceedings themselves, as prohibited by the "intrinsic value" component of the *Galleria* cases. Indeed, Mikelson does not explain in any way how these valuations departed from the requirements of *Galleria I* and *II*.

¶32. Instead, Mikelson contends that the District Court was required to accept--or at least factor in--his expert's "intrinsic valuation" of $101,500 because it was the only valuation meeting the requirements of the *Galleria* cases. Mikelson's contention, however, mischaracterizes the *Galleria* requirements.

¶33. As discussed above, the standard for valuing real property for the purposes of determining a deficiency remains fair market value. *Galleria I*, 239 Mont. at 265, 780 P.2d at 617; *Galleria II*, 250 Mont. at 185, 819 P.2d at 164. Moreover, the willing buyer-willing seller approach often approximates both a property's "fair value" and its "intrinsic value." *See Galleria II*, 250 Mont. at 185, 819 P.2d at 164. The problem in *Galleria I* was that there was no arms' length willing buyer, because the only bidder was the beneficiary of the trust indenture. In the present case, however, two entities--both independent from, and unaffiliated with, the Bank--bid at the execution sale. Furthermore, the separate appraisal by the Bank's expert, which used the traditional appraisal approaches accepted in *Galleria II* for determining fair market value, provided an additional factor for the District Court's consideration in determining the value of the property.

¶34. Finally, we observe that--like the purported "intrinsic valuation" rejected in *Galleria II*--Mikelson's expert admitted that his intrinsic valuation was not an appraisal and, indeed, was not the equivalent of fair market value. That valuation also did not include economic depreciation of the improvements on the real property which, in the District Court's view, rendered the valuation unjustifiably high.

¶35. Simply put, Mikelson has not established any departure by the District Court from the valuation-related requirements of the *Galleria* cases. We hold, therefore, that the District Court did not err in valuing the real property.

**¶36. 3. Did the District Court err in determining the Bank's entitlement to a deficiency?**

**¶37. On appeal, Mikelson contests the propriety of the District Court's determination that the Bank was entitled to a deficiency and requests that we exercise our equity jurisdiction to set the deficiency judgment aside. The Bank responds that this portion of Mikelson's appeal is not properly before us, and we agree.**

**¶38. The District Court entered its findings of fact, conclusions of law and order on January 2, 1996, determining and ordering that the Bank was entitled to a deficiency against Mikelson in the event the proceeds of the sale were less than the amount owed to the Bank; it entered judgment based on the findings of fact, conclusions of law and order on February 10, 1997. The Bank filed a notice of entry of judgment and certificate of service on February 10, 1997, and an amended notice and certificate on February 13, 1997. Mikelson did not appeal from that judgment prior to filing the July 30, 1998, notice of appeal in this case.**

**¶39. An appeal in a civil case may be taken from a final judgment and from certain other judgments and orders. Rule 1, M.R.App.P. The notice of appeal generally must be filed within 30 days of the service of notice of entry of judgment. Rule 5, M.R.App. P.; *see also* Rule 77(d), M.R.Civ.P. Thus, the threshold question here is whether the judgment entered on February 10, 1997, determining that the Bank was entitled to a deficiency against Mikelson, was an appealable final judgment.**

**¶40. We addressed this precise issue in Federal Sav. and Loan Ins. v. Hamilton (1989), 241 Mont. 367, 786 P.2d 1190. There, the Hamiltons defaulted on a promissory note secured by a deed of trust on property to be developed into a mobile home subdivision. *Hamilton*, 241 Mont. at 368-69, 786 P.2d at 1191-92. The district court entered an amended summary judgment order against the Hamiltons on March 21, 1989, granting a decree of foreclosure and a judgment in the amount of $564,600. *Hamilton*, 241 Mont. at 369, 786 P.2d at 1192. The order also provided that "[i]n the event the proceeds of the sale are insufficient to pay the amounts due . . . the Plaintiff shall have a deficiency judgment against the [Hamiltons]. . . ." *Hamilton*, 241 Mont. at 369, 786 P.2d at 1192. Notice of the amended summary judgment was entered on March 24, 1989, and a deficiency judgment subsequently was entered against the Hamiltons. *Hamilton*, 241 Mont. at 369, 786 P.2d at 1192.**

¶41. The Hamiltons appealed on June 16, 1989, challenging both the propriety and the amount of the deficiency judgment. *Hamilton*, 241 Mont. at 370, 786 P.2d at 1192. We determined that the case involved two final orders: first, the amended summary judgment which decreed the foreclosure and granted the right to a deficiency judgment; and second, the deficiency judgment itself. *Hamilton*, 241 Mont. at 369, 786 P.2d at 1192. We concluded that the Hamiltons' Rule 5, M.R.App.P., time for appealing the amended summary judgment which ordered a deficiency judgment in the event of insufficient proceeds from the sale of the property ran from the notice of entry of that judgment; as a result, the Hamiltons' appeal of the propriety of the deficiency judgment was not timely. *Hamilton*, 241 Mont. at 370, 786 P.2d at 1192; *see also* First Western Federal Sav. Bank v. Lence (1992), 255 Mont. 7, 10, 839 P.2d 1277, 1279.

¶42. Pursuant to *Hamilton* and *Lence*, the District Court's February 10, 1997, judgment--which included the Bank's right to a deficiency against Mikelson via its January 2, 1996, findings of fact, conclusions of law and order--was an appealable final judgment under Rule 1, M.R.App.P. As a result, Rule 5, M.R.App.P., required Mikelson to file a notice of appeal regarding the propriety of the deficiency within 30 days from the service of the amended notice of entry of judgment on February 13, 1997. Mikelson did not do so and, indeed, did not appeal the propriety of the deficiency until July 30, 1998. We conclude that Mikelson's appeal of that issue is untimely and, as a result, we are without jurisdiction to entertain it. *See* First Sec. Bank of Havre v. Harmon (1992), 255 Mont. 168, 172, 841 P.2d 521, 524 (citations omitted).

¶43. 4. Did the District Court err in calculating interest?

¶44. In February of 1997, the District Court entered judgment against Mikelson in the amount of $170,507.41, which included interest on the balance remaining on the promissory note at 10.5 percent per annum from September of 1989 to the entry of that judgment. On February 10, 1998, the District Court entered a deficiency judgment in the amount of $197,609.49, which included the prior judgment of $170,507.41, interest on that judgment at 10.5 percent per annum, costs and attorneys' fees. Mikelson advances in one paragraph several assertions of legal error regarding the February 10, 1998, judgment. We review a district court's legal conclusions to determine whether the interpretation of the law is correct. *Choteau Library Bd.*, 283 Mont. at 90, 938 P.2d at 1359.

¶45. Mikelson's first contention is that §§ 31-1-109, and 25-9-205, MCA, preclude interest from the date of the foreclosure judgment to the final deficiency. Mikelson did not advance this argument in the District Court, however, and it is well settled that this Court will not consider issues raised for the first time on appeal. *See* Cenex v. Board of Com'rs for Yellowstone (1997), 283 Mont. 330, 337-38, 941 P.2d 964, 968 (citation omitted). Therefore, we decline to address this contention.

¶46. Mikelson also contends that, pursuant to the *Galleria* cases, interest ceases to accrue on the foreclosure judgment from the date of the sale of the property to the date of the final judgment. Mikelson cites to no statement in either *Galleria* case which supports his contention. Moreover, while *Galleria II* addressed an issue relating to our directive to the district court on remand from *Galleria I* to suspend interest from the date of the sale in the event the fair market value determined on remand exceeded the Trustees' bid, our discussion focused on Rule 31, M.R.App.P., which requires this Court to provide instructions with respect to interest when reversing or modifying a judgment. *See Galleria II*, 250 Mont. at 187, 819 P.2d at 165. Unlike *Galleria I*, we have neither reversed nor modified the District Court's judgment in this case. As a result, Mikelson's reliance on the *Galleria* cases with regard to the suspension of interest is misplaced. We hold that the District Court did not err in calculating interest.

¶47. As a final matter, the Bank asserts that the District Court made a clerical error in its final judgment. In its findings of fact, conclusions law and order filed February 23, 1998, the District Court concluded that the Bank was entitled to a deficiency judgment against Mikelson in the amount of $197,690.49. In its final judgment filed on February 27, 1998, the District Court ordered that the Bank recover a judgment amount of $193,160.49, plus interest in the amount of $6,033.15, for a total of $199,193.64. The Bank asserts that the judgment amount of $193,160.49 was a clerical error and that the court should have added interest in the amount of $6,033.15 to the deficiency judgment amount of $197,690.49 for a total final judgment of $203,723.64. The Bank proposes that we remand the case to the District Court for the purposes of a Rule 60(a), M.R.Civ.P., motion to correct the clerical error and we agree that this is the appropriate procedure to be followed.

¶48. Affirmed and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER