FILED

November 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0155

DA 15-0155

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 328

WHITEFISH CREDIT UNION,

        Plaintiff and Appellant,

   v.

MARY KAY PRINDIVILLE, GEORGE W. PRINDIVILLE,
LLOYD SHINN, BARBARA SHINN, BARRY
ROTHSCHILD, and JOHN DOE(S) 1-10,

        Defendants and Appellees.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-11-746(A)
                    Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Sean S. Frampton, Johnna J. Preble, Morrison & Frampton, PLLP;
           Whitefish, Montana

       For Appellees:

           Judah M. Gersh, Viscomi & Gersh, PLLP; Whitefish, Montana
           (for Mary Kay and George W. Prindiville)

           Kira I. Evans, George B. Best, Best & Westover Law Office;
           Kalispell, Montana (for Lloyd and Barbara Shinn, and Barry Rothschild)


                            Submitted on Briefs:  September 30, 2015
                                   Decided:  November 24, 2015

Filed:

                           _____
                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Whitefish Credit Union (WCU) appeals from the Eleventh Judicial District Court, Flathead County, challenging the District Court's determination that a hearing was required to determine the fair market value of a foreclosed property, as well as the District Court's valuation of the property and denial of a deficiency judgment.

¶2 WCU raises several issues that we restate as follows:

*1. Did the District Court err by ruling that a hearing was necessary as a matter of law to determine the fair market value of the foreclosed property on a request for a deficiency judgment?*

*2. Did the District Court err by determining a value of the foreclosed property that was not supported by credible evidence?*

*3. Did the District Court err by improperly admitting evidence at the hearing?*

¶3 We affirm the District Court's decision to conduct a hearing, but remand for further proceedings consistent with this opinion on the evidentiary issues and the applicable standard. Therefore, we do not reach the second issue.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Defendants Mary Kay and George W. Prindiville, Lloyd and Barbara Shinn, and Barry Rothschild (collectively "the Defendants"), completed a series of transactions to acquire over 600 acres of real property along Patrick Creek Road, in Flathead County (the "Patrick Creek property"), borrowing $2,237,000 from WCU. After a series of amendments, Defendants signed a promissory note to WCU for a total of $1,949,466.81, secured by mortgages on the Patrick Creek property. In 2011, the Defendants defaulted on that note, owing a principal balance of $1,951,670.81, and offered WCU a deed in lieu

2

of foreclosure. WCU did not accept the deed, and filed this action in June 2011 for foreclosure and collection of the debt, including any sums owing after the sale of the property.

¶5 WCU moved for summary judgment in October 2011, and the Defendants opposed the motion. The parties eventually stipulated to a foreclosure sale, and the District Court entered a Judgment of Foreclosure and Order of Sale in March 2012, reserving a ruling on the motion for summary judgment and the issue of a deficiency judgment against the Defendants.[1] The property was sold at a sheriff's sale on June 12, 2012 to WCU, the highest and only bidder, for $1,100,000.

¶6 WCU thereafter filed a request for entry of a deficiency judgment against the Defendants for the amount of $745,365.79. The Defendants opposed the request, arguing that the fair market value of the Patrick Creek property exceeded the loan balance. In opposing the entry of a deficiency judgment, Defendants argued that the parties had long disputed the value of the property, and requested a hearing to determine the fair market value of the property. After oral arguments, the District Court entered an Order in September 2013 granting WCU's motion for summary judgment in part by rejecting the Defendants' arguments that a deficiency judgment was barred, but holding that, as a matter of law, it "must hold a hearing" to determine the fair market value of the property, and the amount of the deficiency judgment, if any.

---

[1] The District Court's Judgment of Foreclosure and Order of Sale states: "If it appears from the Sheriff's return that the proceeds are insufficient and a balance still remains due on the judgment, judgment for the balance due may be entered against Defendants if the Court so orders following the Court's consideration of the arguments raised by Defendants on summary judgment."

3

¶7 At the hearing, both parties presented appraisals and expert testimony as evidence of the fair market value of the property. The appraisals were completed at various times before and during the foreclosure process. The first appraisal was completed by Lloyd Barrie (the "Barrie appraisal") in 2011, prior to WCU filing the foreclosure action. Barrie was not present and did not testify at the hearing. The Patrick Creek property was again appraised a few months prior to the sheriff's sale in February 2012 by William Frazier (the "Frazier appraisal"). Finally, the Defendants hired Gene Lard to complete an appraisal in 2013 (the "Lard appraisal"), which was prepared to retroactively value the property as of June 2012, or the date of the sheriff's sale. Both Frazier and Lard testified at the hearing.

¶8 The District Court found the Patrick Creek property was worth $2,366,667 as of the date of the sheriff's sale, and determined that no deficiency was owed to WCU. WCU appeals.

## STANDARD OF REVIEW

¶9 The District Court's conclusion that a fair market value hearing was required was a conclusion of law. "We review a district court's legal conclusion—including its application of the law to the facts—to determine whether the interpretation of the law is correct." *Bank of Baker v. Mikelson Land Co.*, 1999 MT 76, ¶ 26, 294 Mont. 64, 979 P.2d 180 (citation omitted) (reviewing a district court's valuation of a foreclosed property sold at sheriff's sale and subsequent award of deficiency judgment).

4

¶10    Evidentiary issues, including rulings on the admissibility of expert testimony, are reviewed for abuse of discretion. *See Simmons Oil Corp. v. Wells Fargo Bank, N.A.*, 1998 MT 129, ¶ 17, 289 Mont. 119, 960 P.2d 291 (citations omitted); *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 18, 362 Mont. 53, 261 P.3d 984 (citations omitted).

¶11    Finally, "[i]n reviewing the District Court's findings of fact, the standard of review to be applied is whether the findings are clearly erroneous." *In re Marriage of Olsen*, 257 Mont. 208, 213, 848 P.2d 1026, 1030 (1993).

## DISCUSSION

¶12    *1. Did the District Court err by ruling that a hearing was required as a matter of law to determine the fair market value of the foreclosed property on a request for a deficiency judgment?*

¶13    WCU argues that a hearing to determine the fair market value of a foreclosed property is not required under statute, and that nothing in the law requires a judicial determination of fair market value before entry of a deficiency judgment. At best, WCU argues, Montana law permits a district court to hold such a hearing "[o]nly in cases where evidence presented shows that the amount bid was not a 'fair price . . . .'" and that, here, the Defendants did not submit any evidence to show that the successful bid of $1.1 million at the sheriff's sale was not a fair price for the Patrick Creek property. WCU argues that the District Court erred by concluding that a hearing was required as a matter of law and by failing to "find that it was moved in equity" to consider the fair price of the property before entering a deficiency judgment.

5

¶14 Section 71-1-222(2), MCA, provides for entry of a deficiency judgment against the debtor after a foreclosure and sheriff's sale, stating: "If it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for the balance against the defendant or defendants personally liable for the debt . . . ." Although the statute does not contemplate a hearing, our cases have addressed this issue and provided additional guidance to the process of entering a deficiency judgment in a foreclosure proceeding.

¶15 In *Trs. of Wash.-Idaho-Mont. Carpenters-Emp'rs Ret. Trust Fund v. Galleria P'ship*, 239 Mont. 250, 263, 780 P.2d 608, 616 (1989) (*Galleria I)*, this Court affirmed that the debtors were "liable for [a] deficiency judgment," but in an exercise of equity, remanded the case to the district court for a hearing to assess the property's fair market value that would serve as the basis for the amount of the deficiency judgment. *Galleria I*, 239 Mont. at 265-66, 780 P.2d at 617. Our discretion was moved in light of the fact that the subject property was sold at a sheriff's sale for 30% of its originally appraised value, leading to "a catastrophic deficiency judgment" against the debtors. *Galleria I*, 239 Mont. at 264, 780 P.2d at 616. Although noting that the statutes were silent on the duty of the courts in this regard, we explained that mortgage foreclosure proceedings are "in the equity jurisdiction of the courts" and that the courts are therefore "empowered to determine all the questions involved in the case and to do complete justice; this includes the power to fashion an equitable result . . . and grant all relief necessary to the entire

6

adjustment of the subject." *Galleria I*, 239 Mont. at 265, 780 P.2d at 617 (citations omitted).

¶16     A year later, in *Fed. Sav. & Loan Ins. Corp. v. Hamilton*, 241 Mont. 367, 786 P.2d 1190 (1990), the debtors argued on appeal that this Court should remand the case for a hearing to determine the adequacy of the sales price and the amount of the deficiency judgment, as we had in *Galleria I*.  We declined to do so, noting first that, while "several states have statutes requiring that the amount realized at a sheriff's sale must reflect the fair market value of the property, Montana statutes have no such requirement." *Hamilton*, 241 Mont. at 371, 786 P.2d at 1193.  We also reasoned that the debtors had "failed to submit any relevant evidence of the fair market value on the date of sale" and that there was "a total absence of facts demonstrating that [the purchase price] was not a fair price." *Hamilton*, 241 Mont. at 371, 786 P.2d at 1193.  While acknowledging that in *Galleria I* "[w]e remanded 'in the exercise of our equity jurisdiction[,]'" we concluded that "the Hamiltons have failed to present any evidence requiring an exercise of our equity jurisdiction." *Hamilton*, 241 Mont. at 371, 786 P.2d at 1193.

¶17     WCU correctly argues that a hearing to determine the fair market value of the property is not mandated by statute, or by case precedent.  A hearing is not a legal right of a debtor and, to the extent the District Court concluded that a hearing was required as a matter of law, this was incorrect.  As *Galleria I* and *Hamilton* make clear, the specific facts of a case will determine if a court is moved "in the exercise of" equity jurisdiction to hold such a hearing. *See Galleria I*, 239 Mont. at 265, 780 P.2d at 617; *Hamilton*, 241

7

Mont. at 371, 786 P.2d at 1193. However, the District Court had discretion to act in equity and we conclude that it did not abuse its discretion in proceeding to conduct a hearing. It noted the parties' long-standing differences of opinion about the value of the Patrick Creek property and WCU's request for a deficiency judgment exceeding $700,000. The Defendants had noted that a 2011 appraisal obtained by WCU (the Barrie appraisal) on 516 of the total 634 acres of the Patrick Creek property appraised the value to be $2,500,000, and that this figure had been assumed by WCU in certain of its internal lending documents. Thus, evidence in the record supports a decision to discretionarily act in equity and conduct a hearing. Although the District Court did not enter an express finding "that it was moved in equity," any such error was a *de minimus* omission in light of the support for such a hearing in the record. The court did not err by conducting a hearing.

¶18 WCU's argument that a determination of fair market value is not required raises the question of the proper standard to be applied in this proceeding. Because the court is moved in equity, it is charged with "fashion[ing] an equitable result," *Galleria I*, 239 Mont. at 265, 780 P.2d at 617, which necessarily encompasses an equitable result for both parties. The recent housing and foreclosure crisis, out of which this case arises, serves as a vivid reminder of the risk that a borrower assumes when entering into a mortgage. "By entering into a mortgage transaction, a property owner incurs a dual risk – the risk of loss of title to the property through foreclosure and the risk of personal liability for the deficiency in the event that the property sells at foreclosure for less than

8

the remaining balance of the debt." Alan M. Weinberger, *Tools of Ignorance: An Appraisal of Deficiency Judgments*, 72 Wash. & Lee L. Rev. 829, 836 (2015). However, the borrower is not the only party assuming potential risk in a mortgage transaction. "Lenders who earn a fixed rate of return should not be expected to bear the full burden of the risk of declining property values. Protecting defaulting borrowers against deficiencies adversely affects a broader category of nondefaulting borrowers by increasing the cost and reducing the availability of credit." Alan M. Weinberger, *Tools of Ignorance: An Appraisal of Deficiency Judgments*, 72 Wash. & Lee L. Rev. 829, 877 (2015). While we do not adopt these statements as binding principles of law, they nonetheless demonstrate the competing interests at stake that courts must recognize in this equitable proceeding. As has been explained, "the law governing the mortgage, deed of trust and land sales contract foreclosures in Montana is an attempted balance. It seeks to balance the protection the law affords to a debtor whose personal assets may ultimately be subject to a deficiency judgment and the restrictions imposed on a foreclosing creditor who must obtain the collateral in partial or total satisfaction of the defaulted loan." David J. Dietrich, *The Montana Judicial and Non-judicial Foreclosure Sale: Analysis and Suggestions for Reform*, 49 Mont. L. Rev. 285, 287 (1988).

¶19 When again considering *Trs. of Wash.-Idaho-Mont. Carpenters-Emp'rs Ret. Trust Fund v. Galleria P'ship*, 250 Mont. 175, 819 P.2d 158 (1991) (*Galleria II*), we considered whether the district court abused its discretion in determining the value of the property. In affirming the district court's assignment of value, we reiterated our previous

9

definition of "fair market value." *Galleria II*, 250 Mont. at 185, 819 P.2d at 164 ("As our discussion will demonstrate, the definition of fair market value in *Galleria [I]* is adequate."). Revisiting *Galleria I* and a discussion of foreclosure laws from other jurisdictions provided in *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 734 P.2d 1203 (1987), we again cited with approval a California decision that gave further guidance to the question:

> In *Galleria [I]*, we defined "fair market value" as "the intrinsic value of the real property with its improvements at the time of sale under judicial foreclosure, without consideration of the impact of the foreclosure proceedings on the fair market value." *Galleria I*, 239 Mont. at 265, 780 P.2d at 617. Most importantly, we left the *method* of determining fair market value to the District Court.

> . . .

> Under normal conditions the "fair value," or "intrinsic value," of property will often coincide with its fair market value, the value a willing purchaser will pay to a willing seller in an open market. The court [in *Rainer Mortg. v. Silverwood Ltd.* (1985), 163 Cal. App. 3d 359, 367] explained:

>> This correlation is not fixed, however, and market value is only *one* factor the court should consider when determining "fair value." . . . "Fair value" is to be determined by *all of the circumstances affecting the intrinsic value of the property at the time of the sale*. This necessarily excludes the circumstances of the foreclosure sale.

*Galleria II*, 250 Mont. at 185, 819 P.2d at 164 (emphasis in original; underlining added); *see also Bank of Baker v. Mikelson Land Co.*, 1999 MT 76, ¶ 33, 294 Mont. 64, 979 P.2d 180 ("[T]he standard for valuing real property for the purposes of determining a deficiency remains fair market value.") (citing *Galleria I*, 239 Mont. at 265, 780 P.2d at 617; *Galleria II*, 250 Mont. at 185, 819 P.2d at 164). Just as the decision to conduct a

10

hearing is a matter of equity, the determination of "fair market value" is an equitable task that is neither automatic nor mechanical, but subject to the factors we have mentioned. "Fair value" and "fair market value" may not necessarily be any different, although the circumstances of a particular case may cause a court to conclude there is a distinction. If a district court determines to act in equity and conduct a hearing, it is to apply our above-stated standards in the process of endeavoring to "fashion an equitable result." *Galleria I*, 239 Mont. at 265, 780 P.2d at 617.

¶20   2. *Did the District Court err by determining a value of the foreclosed property that was not supported by credible evidence?*

¶21   Because we remand to the District Court for further proceedings as discussed further herein, we will not consider the District Court's valuation of the property.

¶22   3. *Did the District Court err by improperly admitting evidence at the hearing?*

¶23   Appellants raise three evidentiary issues on appeal and we address them in turn.

### I.  Lloyd Barrie's Appraisal

¶24   WCU argues that the District Court erred in admitting the Barrie appraisal because it was hearsay. Barrie did not testify and his statements made outside of court were offered to prove the value of the Patrick Creek property. Defendants argue that the Barrie appraisal was properly admitted as a hearsay exception because the report, commissioned by WCU, was a "vicarious admission of value made by WCU" through Barrie as its "agent or servant concerning a matter within the scope of the agency or employment," citing M. R. Evid. 801(d)(2). Alternatively, Defendants argue that the Barrie appraisal was not admitted for its substance or, if error, was harmless.

11

¶25     Defendant and owner Mary Kay Prindiville testified that she had read the Barrie appraisal and relied on it in forming her own valuation of the property. The Barrie appraisal was admitted into evidence, over WCU's objection, and, in its Order, the District Court cited and relied upon it:

> The Court reviewed the appraisals submitted by the various experts . . . . The average of values placed on the property by Barrie, Elm and Lard is $2,366,667 and the Court is persuaded that the appraisals submitted by these experts are more reasoned and based on property which is more similar to the property at issue than the appraisal submitted by the Plaintiff.

¶26     The fact that WCU retained Barrie to appraise the Patrick Creek property does not support Defendants' contention that Barrie was acting as an agent or servant for WCU, making his appraisal a vicarious admission of value arising out of his agency or employment. Barrie, a professional independent appraiser, certified in his report that "[t]he reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions." We find no merit in the argument that Barrie's appraisal was an admission of value by WCU that it is not defined as hearsay.

¶27     Ms. Prindiville was permitted to testify as a lay witness about her opinion of the value of the property. *See* M. R. Evid. 701; *Harding v. H. F. Johnson, Inc.*, 126 Mont. 70, 82, 244 P.2d 111, 118 (1952) (clarifying that "[t]he owner of property is a competent witness to estimate its worth."). However, because she is a lay witness, M. R. Evid. 703 (allowing experts to rely on inadmissible data or opinions in forming their own opinions) does not apply to her, and her testimony regarding the contents of the Barrie appraisal

12

was error. Defense expert Lard similarly read the Barrie appraisal, and was permitted to explain his reliance on it, but this did not authorize admission of the Barrie appraisal as substantive evidence, as we have recently explained. *See Reese v. Stanton*, 2015 MT 293, ¶ 22, 381 Mont. 241, __ P.3d __ (citing *Polythane Sys. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) ("[T]o admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion.")). By admitting the report into evidence and relying on the report to find the property's value, the District Court abused its discretion.

## II. Gene Lard's Undisclosed Opinion

¶28 WCU argues that the District Court erred by admitting undisclosed expert opinions from Defendants' appraiser Lard when he testified as to the percentage adjustments that should have properly been used in the Frazier appraisal. Defendants respond that Mr. Lard's testimony was simply rebuttal testimony, or in the alternative, that Lard was qualified to offer an expert opinion regarding adjustments to the properties. WCU does not contest Lard's qualification as an expert, but only that he offered his opinion without proper disclosure.

¶29 "Rebuttal testimony is proper only if it tends to counteract a new matter offered by the adverse party." *State v. Hart*, 2000 MT 332, ¶ 20, 303 Mont. 71, 15 P.3d 917 (citing *State v. Daniels*, 210 Mont. 1, 10, 682 P.2d 173, 178 (1984)). Lard's testimony criticizing Frazier's adjustment methods was proper rebuttal testimony. However, when

13

Lard proceeded to testify about his opinions[2] on the adjustments that should have been made, based on his professional knowledge, he was offering direct expert opinion testimony that should have been disclosed prior to the hearing. M. R. Civ. P. 26(b)(4)(A)(i). "The underlying policies requiring expert disclosures are to eliminate surprise and to promote effective cross-examination of expert witnesses." *Reese*, ¶ 32 (citing *Hawkins v. Harney*, 2003 MT 58, ¶ 26, 314 Mont. 384, 66 P.3d 305). Because this opinion was not disclosed prior to the hearing, WCU was not prepared to cross-examine Lard on his opinions and the basis for them. Lard's opinions about the percentage adjustments he would make should have been excluded at the hearing, and the District Court abused its discretion by admitting them.

### III. Alan Elm's Testimony

¶30 WCU argues that the District Court improperly considered the testimony of real estate broker Alan Elm when making its findings. Elm did not testify, but his affidavit valuing the property was previously filed as an attachment to Defendants' pleadings. Defendants argue that because WCU's counsel mentioned Elm's work in opening statements and in cross examination of Lard, WCU included Elm's opinion in the

---

[2] Counsel for Defendants Prindivilles asked Mr. Lard, "So getting back to that percentage adjustment, if you were going to attempt to say what might be an appropriate adjustment – even though of course you didn't make one and you said you didn't think such an analysis would be appropriate, but what percentage type would you be considering to try to do that with?" Mr. Lard stated: "Based on an appraisal my associate, Mary Arndt, did in Niarada last summer we were looking at sales throughout Sanders County, in Flathead County and Lake County, and it appears that property values are less than half of what we are in this county. So location adjustment I would have made it in excess of a hundred percent."

14

proceeding and "should not now be claiming error." The District Court's Order relied on the Elm affidavit and erroneously stated that he testified:

> Defendants Prindiville also engaged Alan Elm to appraise the property. Mr. Elm submitted his affidavit and he testified at trial; he placed a value on the property as of the June 12, 2012, the date of Sheriff's sale, to be at least $2,400,000. Mr. Elm is a licensed real estate broker in Montana and is competent to testify as an expert. This value is close to the valuation placed on the property by Mr. Barrie, the real estate appraiser engaged by Plaintiff, Whitefish Credit Union.

¶31 We disagree with the argument that WCU counsel's opening remarks that Elm was expected to testify served to introduce Elm's testimony into evidence, or that referencing Elm's work during cross examination of Lard served to introduce Elm's affidavit as substantive evidence. Elm did not testify and his report should not have been admitted, although the record does not appear to contain a specific ruling from the District Court on admitting Elm's affidavit. In any event, to the extent that the District Court admitted and relied upon Elm's affidavit for the value of the Patrick Creek property, this was error.

¶32 "An abuse of discretion in an evidentiary ruling does not necessarily constitute reversible error, however. . . . In other words, 'a reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result.'" *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P.2d 427 (citation omitted). Here, the District Court received significant evidence regarding the value of the property that was improperly admitted, and relied upon that evidence in entering its findings, which clearly affected the outcome of the hearing.

15

## CONCLUSION

¶33    Although the District Court made technical errors, it nonetheless did not abuse its discretion by proceeding in equity to determine the fair value of the property for purposes of entering a deficiency judgment, if any.  However, we conclude that the evidentiary errors clearly affected the outcome of the proceeding to the prejudice of WCU and that a remand for further proceedings and application of the proper standards is necessary, consistent with the holdings herein.

¶34    Affirmed in part, reversed in part, and remanded for further proceedings.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA